**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: BRYAN GATES, JR.,
*Appellant.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

NICHOLAS SANCHEZ HERNANDEZ,
*Defendant.*

No. 09-4125

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., Chief District Judge.
(1:08-cr-00409-JAB-1)

Argued: January 28, 2010

Decided: March 26, 2010

Before TRAXLER, Chief Judge, and KING and
GREGORY, Circuit Judges.

Reversed by published opinion. Chief Judge Traxler wrote the
opinion, in which Judge King and Judge Gregory joined.

## COUNSEL

**ARGUED**: Bryan Gates, Jr., Winston-Salem, North Carolina,
for Appellant. Terry Michael Meinecke, OFFICE OF THE

UNITED STATES ATTORNEY, Greensboro, North Caro-
lina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United
States Attorney, L. Patrick Auld, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Greensboro, North Carolina, for Appellee.

---

## OPINION

TRAXLER, Chief Judge:

Bryan Emery Gates, Jr., appeals his contempt conviction
under 18 U.S.C. § 401(3) for failing to appear in court on time
for a plea hearing. We conclude that the district court errone-
ously imposed punishment in a summary proceeding without
affording Gates notice or a meaningful opportunity to respond
to the charges against him. For the reasons that follow, we
reverse.

I.

Gates, an attorney practicing in North Carolina, was
appointed by the district court to represent Nicholas Sanchez
Hernandez with respect to federal criminal charges in a ten-
count indictment filed in the Middle District of North Caro-
lina. On December 2, 2008, Hernandez pled not guilty to all
counts. The district court entered a general scheduling order
applicable to all cases arraigned in the Middle District of
North Carolina during December 2008, requiring that any
plea agreements be filed by December 31, 2008, and prelimi-
narily setting all change of plea hearings for January 5, 2009.

Hernandez ultimately pled guilty to five counts in the
indictment. The district court scheduled and rescheduled Her-
nandez's plea hearing three times, relying on the office of the
United States Attorney to notify Gates of the date and time.
As was apparently common practice, Mr. Owens, a staff

employee of the United States Attorney, communicated the hearing schedule by telephone rather than formal, written notice.

On January 5, despite the fact that Hernandez had not yet agreed to the terms of a plea agreement, the government requested that the district court direct him to appear for a change of plea hearing in accordance with the date established by the general scheduling order. Because Hernandez was in state custody at the time, the government moved for, and the district court granted, a Writ of Habeas Corpus Ad Prosequendum to secure Hernandez's presence for a change of plea hearing. On January 7, 2009, Hernandez appeared for the hearing, but, having no written plea agreement in place, "elected not to enter a plea of guilty." J.A. 3.

State officials subsequently transferred custody of Hernandez to federal agents. On January 29, 2009, the government moved for an order of detention; by this time, however, Hernandez had decided to change his plea on five of the ten counts and signed a waiver of his right to a detention hearing. Although a plea agreement still had not been filed, the district court proceeded to schedule a change of plea hearing for Monday, February 2, 2009, which was also the trial date.

On Thursday, January 29, however, the district court decided to reschedule Hernandez's plea hearing for the morning of Friday, January 30—the next day. When the court called Hernandez's case at 10:50 a.m. Friday morning, shortly after the government filed the signed plea agreement, neither Gates nor Hernandez was present. The district judge inquired whether the government notified Gates of the last-minute scheduling change:

> THE COURT: Have you had communication with Mr. Gates?

[AUSA]: I have not personally [spoken] with him. My understanding was that . . . he left some time ago from his office to appear in court this morning.

THE COURT: Had you previously given him notice that the case was scheduled for . . . [a] change of plea today?

[AUSA]: Our office did . . . yesterday afternoon. . . . I checked with Mr. Owens [the staffer who oversees scheduling matters] in our office, who indicated that he had spoken to Mr. Gates and let him know that it was on for this morning.

THE COURT: For the record, show that this matter is being called. Mr. Gates has not yet appeared, even though he had been given earlier advice yesterday to be in court this morning . . . . The Court will note that this is not the first time Mr. Gates has not made a timely appearance in the court after having advice that his case was scheduled for trial.

J.A. 6-7.

Gates arrived in court fifteen minutes later and attempted to explain his tardiness to the district court:

THE COURT: Mr. Gates, on this occasion and other occasions we've been trying to find you for matters before this Court and you're always not here on time. What is your explanation today?

MR. GATES: . . . This morning—the last message I got was that this case was on for change of plea on Monday [February 2].

THE COURT: Did you get a message yesterday about this case from Mr. Owens in the U.S. Attorney's office?

MR. GATES: I got a message yesterday that said it may be rescheduled for today and I was awaiting to hear further.

When I talked with Mr. Owens this morning, he said, "I left a message with your assistant saying that it had been changed." My assistant has the day off, so I couldn't ask her about that.

. . . . [S]he did come in personally [referring to January 29, the day before the hearing] and tell me that . . . there was the possibility that this case was going to be rescheduled for today.

THE COURT: And what effort did you make to find out?

MR. GATES: I waited to hear for when that would be confirmed. . . .

THE COURT: You didn't pick up the phone to call somebody to find out since you knew there might be some confusion as to being scheduled today?

MR. GATES: I interpreted the message . . . as a warning [that] this may be in the works.

THE COURT: The Court does not accept the explanation you're giving . . . [and] *finds that the action that you're taking in delaying this matter on this occasion and your appearance on other occasions* in the matter delayed the Court, having to inquire into your whereabouts, to call and find you to be here. The Court finds that *to be contemptuous conduct.* . . .

That does not affect your client's actions . . . but just your conduct of *continued* failure to appear in a timely fashion. You made no effort to follow up. To

suggest to the Court that you sat back and waited for somebody to tell you whether or not your case is scheduled for trial is just not acceptable.

J.A. 7-10 (emphasis added). Having concluded Gates's conduct was contemptuous, the district court imposed a $200 fine against Gates.

On appeal, Gates argues that because his alleged contempt was committed, if at all, outside of the district court's presence, the court was precluded from summarily imposing contempt sanctions. Instead, Gates claims he was entitled, at a minimum, to reasonable notice and a chance to prepare a defense against allegations that his failure to be on time for Hernandez's hearing, as well as his failure to appear on other unspecified occasions, constituted criminal contempt under 18 U.S.C. § 401(3). Moreover, Gates argues that because the record contains no evidence of the kind of intentional conduct required for a criminal contempt conviction under § 401(3), there is no reason for us to remand for a plenary contempt hearing. We conclude that on both points Gates is correct.

## II.

Gates did not object to the summary procedure employed by the district court in its consideration of criminal contempt sanctions against him, nor did he specifically challenge the sufficiency of the evidence to satisfy the elements of a criminal contempt offense. Thus, the plain error standard of review applies. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). We recognize, however, that until the very moment the district court imposed a fine against Gates, it was not at all clear that the district court was contemplating criminal contempt sanctions. The district court simply asked Gates to explain why he failed to make a timely appearance for Hernandez's plea hearing. The court did not indicate that contempt sanctions were a possibility, and we

see nothing in the record suggesting that Gates should have understood that the court was weighing the possibility of a contempt citation. Under the circumstances, Gates's failure to raise a timely objection to the court's summary contempt proceeding is understandable.

Nonetheless, as reasonable as Gates's response may have been, the issues before us on appeal were not raised or tested below, and therefore we are constrained to apply the plain error standard of review. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993); *see also United States v. Neal*, 101 F.3d 993, 996 (4th Cir. 1996) (reviewing for plain error the district court's failure to appoint an independent prosecutor to pursue contempt sanctions); *United States v. Hawkins*, 76 F.3d 545, 552 (4th Cir. 1996) (per curiam) (considering whether the district court's notice of contempt proceedings was so inadequate that its issuance constituted plain error). Accordingly, we must determine whether (1) the district court committed an error, (2) whether the error committed is plain, and (3) whether the district court's error "affects substantial rights." *Olano*, 502 U.S. at 732 (internal quotation marks and alteration omitted). Even if these prerequisites are satisfied, however, "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and alteration omitted).

## A.

We first consider whether the district court made an error by summarily concluding that Gates committed criminal contempt by failing to appear on time for the plea hearing. There is a fundamental distinction between contemptuous conduct that occurs in the presence of the judge (direct contempt) and contemptuous behavior that occurs beyond the courthouse doors and outside of the judge's presence (indirect contempt).

*See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987). As Judge Wilkins explained in *Neal*, only direct contempt may be addressed summarily:

> Direct, or in-court, contempt involves conduct occurring "in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court . . . and where immediate punishment is essential to prevent demoralization of the court's authority before the public." *In re Oliver*, 333 U.S. 257, 275 (1948) (internal quotation marks omitted); *see United States v. Willett*, 432 F.2d 202, 204 (4th Cir. 1970) (per curiam). Direct contempt may be punished summarily without notice and a hearing. *See Bloom v. Illinois*, 391 U.S. 194, 204 (1968). . . . Indirect, or out-of-court, contempt does not occur within the presence of the court and must be proven through the testimony of third parties or the testimony of the contemnor. *See Willett*, 432 F.2d at 204; *In re Heathcock*, 696 F.2d 1362, 1365 (11th Cir. 1983). The inherent power of the court to punish indirect contempt is limited because conduct occurring out of the presence of the court does not "threaten[ ] a court's immediate ability to conduct its proceedings." [*International Union, UMWA v. Bagwell*, 512 U.S. 821, 832 (1994)]. Thus, indirect contempt may never be punished summarily, *see Cooke v. United States*, 267 U.S. 517, 536-37 (1925), but rather requires adherence to "'more normal adversary procedures,'" *Young*, 481 U.S. at 798 (quoting *Bloom*, 391 U.S. at 204).

*Neal*, 101 F.3d at 997.

Rule 42 of the Federal Rules of Criminal Procedure "preserves the historical distinction between in-court and out-of-court contempt." *Id.* at 997 n.2. Rule 42(b) applies to direct

contempts, permitting a district court to summarily punish a person for criminal contempt that occurs "in its presence if the judge saw or heard the contemptuous conduct and so certifies." Fed. R. Crim. P. 42(b); *see United States v. Rangolan*, 464 F.3d 321, 324 (2d Cir. 2006).

Rule 42(a), by contrast, applies to indirect contempts, permitting punishment "after prosecution on notice." Fed. R. Crim. P. 42(a); *see In re Troutt*, 460 F.3d 887, 893 (7th Cir. 2006) (noting that "[r]ule 42(a), in effect, addresses indirect contempts"). Under Rule 42(a), the alleged contemnor enjoys three essential procedural safeguards: notice of contempt charges against him, the appointment of an independent prosecutor, and disposition after a trial. *See* Fed. R. Crim. P. 42(a); *see also In re Troutt*, 460 F.3d at 894. Of primary importance in this appeal is the requirement that "[t]he court . . . give the person notice in open court, in an order to show cause, or in an arrest order." Fed. R. Crim. P. 42(a)(1). The requisite notice must (1) "state the essential facts constituting the charged criminal contempt and describe it as such," Fed. R. Crim. P. 42(a)(1)(C); (2) permit the alleged contemnor "a reasonable time to prepare a defense," Fed. R. Crim. P. 42(a)(1)(B); and (3) include the trial date, *see* Fed. R. Crim. P. 42(a)(1)(A).

Before we can determine whether the district court erred, we must classify the conduct in question as either direct contempt or indirect contempt. The district court determined that Gates's failure to appear on time for Hernandez's plea hearing violated the federal contempt statute. *See* 18 U.S.C. § 401. The federal contempt law bestows power on federal courts to punish "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). In order to support a conviction under § 401(3), the evidence must demonstrate that "the defendant *willfully* violated a decree that was clear and left no uncertainty in the minds of those that heard it." *United States v. Linney*, 134 F.3d 274, 278 (4th Cir. 1998) (emphasis added); *see United States v.*

*Allen*, 587 F.3d 246, 255 (5th Cir. 2009) (per curiam) ("[T]he elements of criminal contempt under 18 U.S.C. § 401(3) are: (1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." (internal quotation marks omitted)). "Criminal intent is an essential element of the offense." *United States v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977). Therefore, absence or tardiness alone is not contemptuous; the reasons for the failure to appear at the appointed time are of central importance. *See In re Chandler*, 906 F.2d 248, 250 (6th Cir. 1990) ("[A]bsence alone cannot be contempt. . . . The court must learn why the attorney was late in order to determine whether the attorney had criminal intent."). Although the fact of an attorney's or party's absence from a scheduled proceeding may be obvious and "within the knowledge and presence of the court," *United States v. Baldwin*, 770 F.2d 1550, 1555 (11th Cir. 1985) (internal quotation marks omitted), the reason for the absence is not, *see In re Smothers*, 322 F.3d 438, 440 (6th Cir. 2003) (explaining that the reason for an "attorney's absence is not something obvious to the court and therefore cannot fall under [the summary disposition provision of Rule 42]"); *see also In re Allis*, 531 F.2d 1391, 1392 (9th Cir. 1976) (recognizing that "the contempt consists not in the absence from the courtroom but in the reasons for the attorney's presence elsewhere, and the presence elsewhere was, of course, not in the actual presence of the Court").

It has long been the rule in the Fourth Circuit that the mere failure to appear in court at a scheduled proceeding is "not an act committed 'in the actual presence of the court,' and [is] therefore not punishable summarily under Rule 42[(b)]." *United States v. Willett*, 432 F.2d 202, 205 (4th Cir. 1970) (per curiam). Our position is squarely in line with the majority rule that mere tardiness or absence at a scheduled court appearance is not a direct contempt subject to summary disposition under Rule 42(b). *See, e.g., In re Contempt Order*, 441 F.3d 1266, 1268 (10th Cir. 2006) (explaining that attorney's failure to appear "by no stretch . . . occur[red] within the pres-

ence of the court"); *In re Chandler*, 906 F.2d at 249-50 ("'A lawyer's failure to attend court is not a contempt in the presence of the court.'" (quoting *United States v. Onu*, 730 F.2d 253, 255-56 (5th Cir. 1984))); *United States v. Nunez*, 801 F.2d 1260, 1264 (11th Cir. 1986) (per curiam) ("[T]he majority of circuits which have considered the issue have concluded that counsel's tardiness or absence cannot be characterized as contempt in the presence of the court.").

Accordingly, Gates's tardiness was not subject to summary disposition under Rule 42(b), and the district court should have applied the procedural safeguards set forth in Rule 42(a) in considering Gates's conduct. Gates received no prior notice that the district court considered his failure to appear on time contemptuous and intended to try him for it, no summary of the conduct forming the basis of the alleged contempt, and no opportunity to prepare a defense. *See* Fed. R. Crim. P. 42(a)(1)(C) (requiring the notice issued by the district court to include "the essential facts constituting the charged criminal contempt" and to "describe it as such"). Clearly, the district court failed to follow the requirements of Rule 42(a) and disposed of the matter as if it were direct contempt. This was error. *See Richmond Black Police Officers Ass'n v. City of Richmond*, 548 F.2d 123, 126 (4th Cir. 1977) (finding error in indirect contempt case where "the defendants were not given a specification of the essential facts constituting the criminal contempt nor was it described as such" and some of the defendants "were not even directed to show cause, yet they were held in contempt due to their alleged violation of the consent decree").

## B.

The next question for us is whether the district court's error was "plain." An error, to be plain, must be "clear" or "obvious." *Olano*, 507 U.S. at 734 (internal quotation marks omitted); *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009) ("[T]he legal error must be clear or obvious, rather than sub-

ject to reasonable dispute."). "This standard is satisfied when the settled law of the Supreme Court or this circuit establishes that an error has occurred." *Neal*, 101 F.3d at 998 (internal quotation marks omitted). In view of our clear statement in *Willet* that an attorney's absence or failure to appear on time is "not an act committed 'in the actual presence of the court,'" and therefore cannot be disposed of summarily, 432 F.2d at 205, we conclude the error was plain.

## C.

We next address the question of whether the error affects substantial rights. *See Olano*, 507 U.S. at 734. An error that affects substantial rights is an error that has a prejudicial effect on the outcome: there is "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (internal quotation marks and alteration omitted). It is similar to the harmless error test except that the burden is on the defendant in the plain error context. *See Olano*, 507 U.S. at 734-35.

There is, however, "a special category of forfeited errors that can be corrected regardless of their effect on the outcome." *Id.* at 735. Such errors "render a trial fundamentally unfair," *Rose v. Clark*, 478 U.S. 570, 577 (1986), and thus "'necessarily' affect substantial rights," *Neal*, 101 F.3d at 999 (quoting *United States v. David*, 83 F.3d 638, 647 (4th Cir. 1996)). In *Neal*, for example, we concluded the district judge committed an error within this category in failing to appoint a prosecutor to pursue indirect contempt charges against a witness who failed to appear pursuant to a subpoena. *See id.* at 999 (explaining that "[t]he assumption of the role of prosecutor by the district court is the kind of error that we have long understood to undermine the integrity of court proceedings").

Because "criminal contempt [is] a crime in the ordinary sense," the alleged contemnor is entitled to invoke fundamen-

tal procedural safeguards. *Young*, 481 U.S. at 799 (internal quotation marks omitted); *see In re Troutt*, 460 F.3d at 893 ("It is worth underscoring, in this regard, that criminal contempt is a crime, like all other crimes. It is for that reason that the Supreme Court has held that a person accused of criminal contempt enjoys the normal range of procedural rights." (citation omitted)). Of course, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Therefore, due process requires that a person accused of contempt receive, at a minimum, notice and a chance to respond to the charges against him. *See Taylor v. Hayes*, 418 U.S. 488, 500 n.9 (1974) (recognizing that "[a] contemnor is entitled to the elementary due process protections of reasonable notice of the specific charges and opportunity to be heard in his own behalf" (internal quotation marks omitted)).

As previously stated, Gates received no prior notice of the alleged contempt nor any meaningful opportunity to answer the charges. The district court merely asked Gates to explain his failure to appear on time. Although the district judge was clearly irritated (and perhaps with good reason), the court did not indicate, even implicitly, that Gates was being tried for willful "[d]isobedience or resistance" to the court's directive, in violation of 18 U.S.C. § 401(3). Unaware of this fact, Gates had no real opportunity to respond to the criminal intent element of a contempt charge. *See Marx*, 553 F.2d at 876.

Compounding the lack of prior notice was the lack of clarity as to Gates's allegedly contemptuous conduct. The district

court's comments from the bench admit no conclusion but that the district court imposed punishment for *more than one instance* where Gates was tardy. Without ever identifying any other instances, the court stated that it "[found] that the action that [Gates took] in delaying this matter on this occasion *and [his] appearance on other occasions in the matter*" was "contemptuous conduct." J.A. 9 (emphasis added). Even with prior notice, Gates could not have responded to contempt charges for unspecified conduct occurring at unspecified times.

For these reasons, we conclude that the error here was one that affected Gates's substantial rights.

D.

Having concluded that Gates has satisfied the prerequisites for establishing plain error, we still must decide whether to exercise our discretion to correct the error. *See Neal*, 101 F.3d at 999 ("Even if a district court commits an error that is plain and that affects substantial rights, the use of our authority to correct the error remains discretionary."). Thus, even where the first three plain error elements are established, we will exercise our discretion to correct the error only when "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (internal quotation marks omitted). This is so even when the error at issue is not one that is subject to harmless error review. *See United States v. David*, 83 F.3d 638, 647-48 (4th Cir. 1996).

The error here—the failure to provide any notice that Gates would be required to answer contempt charges or even to describe all of the conduct that formed the basis of such charges—was of the most fundamental kind. Notice of criminal charges and an opportunity to respond to them are bedrock principles in our system of justice. We are compelled, therefore, to exercise our discretion to correct the error.

### III.

Gates asserts that there is no reason to remand for the district court to follow the proper procedures under Rule 42(a) as there is insufficient evidence in the record to sustain his conviction under 18 U.S.C. § 401(3). Again, in order to support a conviction under § 401(3), the evidence must establish that "the defendant willfully violated a decree that was clear and left no uncertainty in the minds of those that heard it." *Linney*, 134 F.3d at 278; *see* 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command.").

We agree with Gates. We find the record completely lacking any evidence from which the court could find that Gates had the requisite criminal intent to support a conviction under § 401(3). The record is devoid of evidence showing that Gates willfully refused to appear for Hernandez's plea hearing on Friday, January 30, and there is certainly no evidence of willfulness on the other unspecified instances for which the district court found Gates in contempt. The only evidence in the record was supplied by Gates, who stated simply that, while he knew a Friday hearing was possible, he did not understand that the hearing had actually been rescheduled until he was informed by the office of the United States Attorney on the morning of the hearing. The district court apparently found that Gates's failure "to follow up" on the possibility that the hearing had again been rescheduled was evidence of intent: "To suggest to the Court that you sat back and waited for someone to tell you whether or not your case is scheduled for trial is just not acceptable." J.A. 9-10. We disagree this shows any willfulness or recklessness on the part of Gates. There is no evidence that Gates knew that the hearing had been rescheduled; rather, there is evidence only that Gates knew it was a possibility. At most, Gates might have been negligent in failing to be more active. Negligence, however, is insufficient to sustain a conviction under 18 U.S.C. § 401(3). *See*

*United States v. Mottweiler*, 82 F.3d 769, 771-72 (7th Cir. 1996). Thus, we conclude that, in light of the record, remanding the case for a hearing under Rule 42(a) would serve no purpose.

IV.

Although we are not without sympathy for district judges forced to deal with habitually tardy attorneys, we must ensure that the extraordinary contempt power wielded by federal courts is exercised in a manner that comports with due process. Accordingly, for the foregoing reasons, we reverse Gates's contempt conviction.

*REVERSED*