**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROBERT PEOPLES,

*Defendant-Appellant.*

No. 11-4963

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROBERT PEOPLES,

*Defendant-Appellant.*

No. 11-4965

Appeals from the United States District Court
for the District of South Carolina, at Aiken and Columbia.
Robert J. Conrad, Jr., Chief District Judge for the
Western District of North Carolina, sitting by designation.
(1:11-cr-00675-RJC-1; 3:11-cr-02127-RJC-1)

Argued: September 21, 2012

Decided: October 23, 2012

Before TRAXLER, Chief Judge, and NIEMEYER and
MOTZ, Circuit Judges.

No. 11-4963 affirmed; No. 11-4965 reversed by published opinion. Judge Motz wrote the opinion, in which Chief Judge Traxler and Judge Niemeyer joined.

## COUNSEL

**ARGUED:** Parks N. Small, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Susan Zalkin Hitt, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Kimberly H. Albro, Research and Writing Specialist, Caroline Scrantom, Second Year Law Student, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. William N. Nettles, United States Attorney, Jane B. Taylor, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Robert Peoples challenges two convictions for criminal contempt. For the reasons that follow, we affirm the first conviction and reverse the second.

### I.

Peoples, a former inmate, has brought a number of § 1983 civil actions against prison officials in federal court in South Carolina. The district court scheduled jury selection in three of these cases for February 24, 2011 before Judge Cameron McGowan Currie.

After Peoples arrived late to court on the day of jury selection, Judge Currie cautioned him that he had to appear no later

than 9:30 a.m. on March 21 for the first trial. Nonetheless, on March 21, Peoples arrived late for trial. Judge Currie warned him that if he was late again, she would dismiss his case with prejudice. The first trial concluded without further incident on March 22, with the second trial scheduled to begin at 9:30 a.m. on the next day, March 23.

At 9:15 a.m. on March 23, Peoples called Judge Currie's chambers to notify the court that he was stranded on the interstate, 10 to 15 minutes from the courthouse, with a flat tire and would be late for court. After speaking by telephone with Peoples and roadside assistance personnel, who confirmed that Peoples' vehicle was not drivable, Judge Currie directed a marshal to pick up Peoples and bring him to court. Although this delayed the second trial, Judge Currie did not dismiss the case; instead she found that Peoples had left his home in time to arrive by 9:30 a.m. but had been delayed by an unanticipated event. During the second trial, Peoples became disruptive and disrespectful to the court, and Judge Currie cautioned him that, if he continued to behave that way, he would be held in contempt and possibly incarcerated.

On April 11, the first day of the third trial, Judge Currie reminded Peoples that failure to appear on time for trial the next day could result in dismissal of his case with prejudice. Peoples noted his dissatisfaction with the admonishment by muttering disrespectfully. The following day, Peoples arrived 15 minutes late. After considering argument from the parties, Judge Currie determined that Peoples willfully failed to appear timely after numerous warnings and dismissed his case with prejudice. Judge Currie then directed that the jury be brought into the courtroom so that she could advise them of the dismissal. As the jury entered the courtroom, Peoples left muttering "I was wanting to dismiss my sh-- anyway."

After dismissing the jurors, Judge Currie, accompanied by the court security officer, went into the jury room to thank the jurors for their service. At that time, Peoples reentered the

courtroom, and approached Deputy Clerk Sara Samsa, who was gathering jury certificates to bring to Judge Currie. Peoples interrupted Samsa and repeated several times, "Tell Judge Currie get the f--- off all my cases. I started to tell her something there. I started to tell her ass something today." Upon hearing Peoples' remarks, Court Reporter Jenny Williams, who was finishing her work on the day's proceedings, turned on her voice recorder and recorded Peoples making some of these comments.[1] Samsa told Peoples if he had something to say to the judge, he should put it in writing, and then left the courtroom to tell Judge Currie and the court security officer of Peoples' outburst. The court security officer immediately returned to the courtroom.

The next day, Judge Currie issued a written Rule to Show Cause and Order of Referral, directing Peoples to "show cause why criminal contempt sanctions should not be imposed." Judge Currie recused herself from further proceedings, asking that the criminal contempt trial be referred to another judge.

The criminal contempt trial was referred to Robert J. Conrad, Jr., Chief Judge of the Western District of North Carolina, who scheduled the trial for September 20, 2011 at 10:00 a.m. When Peoples arrived more than an hour late on September 20, Judge Conrad advised Peoples that, given his tardiness that morning, at the conclusion of the trial for contempt of Judge Currie, the court would hold a separate trial for criminal contempt to Judge Conrad himself. At this second contempt trial, Peoples and his attorney would be permitted to offer "any explanation [they] wish to offer with respect to Mr. Peoples showing up late for court this morning."

During the first trial, the parties stipulated to the relevant

---

[1]Although the audio of the recording is somewhat garbled, it also contains an additional statement from Peoples in which he tells Judge Currie to "straighten the f--- up" or "straight the f--- up."

facts as to Peoples' language in Judge Currie's courtroom. They also stipulated to the admission of the actual audio recording of Peoples' outburst and to the admission of FBI reports of interviews with Samsa and Williams setting forth the actions of court personnel in response to Peoples' outburst. In addition, Judge Conrad admitted a transcript from the March 23, 2011 trial in which Judge Currie admonished Peoples that his behavior could result in a contempt charge. After considering the evidence and the parties' arguments, Judge Conrad found Peoples guilty of criminal contempt of Judge Currie, and sentenced Peoples to four months' incarceration.

Immediately after concluding the first trial, Judge Conrad proceeded to a second trial to determine whether Peoples should be held in criminal contempt for his tardiness in appearing in court that day for the first contempt trial. The judge gave Peoples an opportunity to confer with his attorney in the courtroom, while court remained in session. When Peoples had done so, he addressed the court and explained that car trouble caused his tardiness. Judge Conrad found Peoples' explanation not credible and so found him guilty of a second charge of criminal contempt. Judge Conrad sentenced Peoples to an additional 30 days' incarceration consecutive to the four months previously imposed.

Peoples appeals both contempt convictions.

## II.

With respect to his first contempt conviction, Peoples challenges the sufficiency of the evidence.

"'In assessing the sufficiency of the evidence presented in a bench trial, we must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict.'" *United States v. Armel*, 585 F.3d 182, 184 (4th Cir. 2009) (quoting *Elliott v. United States*,

332 F.3d 753, 760-61 (4th Cir. 2003)). "[S]ubstantial evidence" means "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). We review questions of fact, other than the ultimate question of guilt, for clear error. *See United States v. Lockhart*, 382 F.3d 447, 451 (4th Cir. 2004). Determinations of the meaning of statutory phrases, however, constitute legal conclusions that we review *de novo*. *See United States v. Mitchell*, 518 F.3d 230, 233 (4th Cir. 2008).

Congress has provided federal courts with the power to impose criminal penalties for "contempt of [the court's] authority." *See* 18 U.S.C. § 401 (2006). Such acts include "[m]isbehavior of any person in [the court's] presence or so near thereto as to obstruct the administration of justice." *Id.* § 401(1). To convict someone of criminal contempt in violation of § 401(1), the Government must establish beyond a reasonable doubt: "(1) misbehavior of a person, (2) which is in or near to the presence of the Court, (3) which obstructs the administration of justice, and (4) which is committed with the required degree of criminal intent." *United States v. Warlick*, 742 F.2d 113, 115 (4th Cir. 1984). Peoples maintains that the Government failed to offer sufficient evidence of the first and third elements. That is, Peoples contends that the Government failed to prove that his outburst in Judge Currie's courtroom constituted misbehavior or obstructed the administration of justice.

### A.

Peoples asserts that his conduct did not amount to "misbehavior" because the words he "used have legitimate definitions," were not directed at "Judge Currie personally," and he "did not call Judge Currie these . . . terms." Peoples contends that he simply "expressed his unhappiness about Judge Currie's decision in his civil cases in terms . . . possibly offensive

to some," but not rising to the level of misbehavior constituting criminal contempt. Appellant's Br. at 17.[2]

Criminal contempt does require more than just "[t]he vehemence of the language." *In re Little*, 404 U.S. 553, 555 (1972). But Peoples did not just use vehement language. He targeted a judge, using profane language directed at the judge so that she would remove herself from his cases. Thus, Peoples did more than merely utter profane words; he profanely threatened judicial authority.

Courts repeatedly have found that offensive words directed at the court may form the basis for a contempt charge. As the Second Circuit has said, "there is an implicit standing order that parties, counsel, and courtroom attendees refrain from direct and egregious insults to judicial authority." *United States v. Marshall*, 371 F.3d 42, 48 (2d Cir. 2004). *See also In re Sealed Case*, 627 F.3d 1235, 1238 (D.C. Cir. 2010); *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir. 1979).

The record evidence offers ample support for Judge Conrad's conclusion that Peoples' outburst was both threatening and directed at the court, and thereby constituted misbehavior under § 401(1).

## B.

Peoples also maintains that his outburst did not obstruct the administration of justice because it (1) did not impede perfor-

---

[2]In offering this argument, Peoples maintains that Judge Conrad clearly erred in interpreting the recording of Peoples' remarks also to include a direction to Judge Currie to "straighten the f--- up," rather than the interjection "straight the f--- up." The recording is difficult to hear and so we can hardly find Judge Conrad's interpretation clearly erroneous. Further, both versions involve disrespectful, aggressive language and, in any event, the word choice makes no difference in the sufficiency analysis given the other profane language Peoples used.

mance of any judicial duty, but rather (2) occurred after court had adjourned. Appellant's Br. at 12-17.

1.

The phrase "obstructs the administration of justice" in § 401(1) lacks precise definition. The Supreme Court, however, has described the phrase as contemplating an "obstruction to the performance of judicial duty." *In re McConnell*, 370 U.S. 230, 234 (1962) (internal quotation marks omitted). We have added that it "requires . . . some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *Warlick*, 742 F.2d at 115-16.

Judge Conrad concluded that Peoples' outburst impeded the performance of judicial duties in two ways. First, the judge found that Peoples' outburst caused Judge Currie and court personnel to spend time participating in the subsequent investigation of the outburst. Second, Judge Conrad found that when Peoples' outburst occurred it required court personnel to cease their regular duties and tend to the outburst.

As Judge Conrad noted, we have held that the delay and distraction resulting from a court's investigation of misconduct can be considered in determining if a defendant has obstructed the administration of justice. *Warlick*, 742 F.2d at 116. Peoples urges us to abandon this view in favor of the Seventh Circuit's rule, announced in *United States v. Oberhellmann*, 946 F.2d 50, 53 (7th Cir. 1991), that the delay and costs associated with the investigation of contempt cannot themselves serve as proof of obstruction of the administration of justice.

Even if a panel could ignore circuit precedent (which it cannot), we would find no basis for reversal here. This is so because Judge Conrad did not find the delay or distraction resulting from the investigation of contempt *alone* satisfied the obstruction element. Rather, the judge found that the

administration of justice was also obstructed because Peoples delayed court personnel in and distracted them from the performance of their judicial duties. As Judge Conrad put it, at the time of Peoples' outburst, "court personnel [were] continuing to engage in the business of the court" and "[t]hey were obstructed in that effort." Peoples' outburst "required them to leave the work that they were doing and deal with the statement that the defendant made." The record contains undisputed evidence that the outburst (1) delayed Samsa in obtaining jury certificates and bringing them to Judge Currie, (2) prevented Williams from finishing the work associated with the day's proceedings and required her to turn on the recorder and type Peoples' remarks, and (3) caused the court security officer to leave his post and return to the courtroom. Thus, the record clearly supports Judge Conrad's factual finding as to the delay and distraction caused by Peoples' outburst.

Of course, as the Government conceded in the district court, the effect of Peoples' obstructive conduct was not great. But it need not be. *See, e.g.*, *In re Sealed Case*, 627 F.3d at 1238 ("An outburst of foul language directed at the court is intolerable misbehavior in the courtroom and falls within the prohibition of section 401(1)."); *Gordon*, 592 F.2d at 1217 ("[T]here is a point at which mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice."). To satisfy the obstruction element it suffices if the defendant's conduct "interrupt[ed] the orderly process of the administration of justice" by distracting court personnel from, and delaying them in, completing their duties. *Warlick*, 742 F.2d at 115-16. Peoples' outburst did this.

2.

Alternatively, Peoples argues that his outburst did not obstruct the administration of justice because it occurred after court had adjourned and thus did not disrupt a judicial pro-

ceeding. To be contemptuous, however, conduct need not occur during ongoing court proceedings. *See In re Sealed Case*, 627 F.3d at 1237 ("We begin by rejecting the premise that an obstruction of justice cannot occur in the absence of ongoing court proceedings or once the proceedings have concluded. Misbehavior in the courtroom, at any time, carries the potential to obstruct justice.").[3]

Section 401(1) criminalizes conduct "in [the court's] presence or . . . *near* thereto." (Emphasis added.) Thus, as our sister circuits have held, a conviction for criminal contempt under § 401(1) (unlike that under some state contempt statutes), may rest on conduct taking place "near" actual court proceedings, in time or location. *See In re Sealed Case*, 627 F.3d at 1237 (upholding conviction for profane language uttered after court business had concluded); *In re Stewart*, 571 F.2d 958, 966 (5th Cir. 1978) (noting that acts outside the courtroom, but within its immediate vicinity in "the adjoining hallway or the jury room," satisfy statute's proximity requirement). Here, Peoples' improper outburst occurred in the courtroom and interrupted court personnel in their official duties and so obstructed the administration of justice.

## C.

For these reasons, we reject Peoples' challenges to the first contempt conviction. The record fully supports Judge Conrad's findings that Peoples' profane language in Judge Currie's courtroom constituted intentional misbehavior that obstructed the administration of justice.

## III.

With respect to his second contempt conviction, Peoples

---

[3]In arguing to the contrary, Peoples heavily relies on *Brutkiewicz v. State*, 191 So. 2d 222 (Ala. 1966). But the defendant there was charged under a state statute containing language very different from that in § 401.

maintains that Judge Conrad erred by summarily imposing a contempt sanction for Peoples' tardiness in arriving at the trial on the first contempt charge. Because Peoples failed to object to the imposition of summary contempt before the district court, we review for plain error. *See In re Gates*, 600 F.3d 333, 337 (4th Cir. 2010).

Generally, a person who commits criminal contempt may be punished for his contemptuous conduct only "after prosecution on notice." Fed. R. Crim. P. 42(a). The federal rules provide a limited exception for *summary* punishment of criminal contempt committed "in [the court's] presence" and which "the judge saw or heard." Fed. R. Crim. P. 42(b).

We, and the majority of our sister circuits, do not consider tardiness or absence from court to provide an adequate basis for summary disposition under Rule 42(b). *See In re Gates*, 600 F.3d at 339 (holding that mere tardiness, like failure to appear, does not occur "in the actual presence of the court" and therefore is not subject to summary punishment (internal quotation marks omitted)); *see also In re Contempt Order*, 441 F.3d 1266, 1268 (10th Cir. 2006) (explaining that attorney's failure to appear "by no stretch . . . occur[red] within the presence of the court"); *In re Chandler*, 906 F.2d 248, 249-50 (6th Cir. 1990) ("'A lawyer's failure to attend court is not a contempt in the presence of the court.'" (quoting *United States v. Onu*, 730 F.2d 253, 255-56 (5th Cir. 1984))); *United States v. Nunez*, 801 F.2d 1260, 1264 (11th Cir. 1986) (per curiam) ("[T]he majority of circuits which have considered the issue have concluded that counsel's tardiness or absence cannot be characterized as contempt in the presence of the court.").

Therefore, when tardiness provides the basis of a contempt charge, "the district court should . . . appl[y] the procedural safeguards set forth in Rule 42(a) in considering [the] conduct." *In re Gates*, 600 F.3d at 339. These safeguards include notice, "reasonable time to prepare a defense," appointment of

a prosecutor, and disposition after trial. *See* Fed. R. Crim. P. 42(a).

The Government acknowledges that Judge Conrad "announced that [he] was proceeding pursuant to Rule 42(b)," i.e., the summary contempt rule, but contends that the court "nonetheless provided to the defendant all of the safeguards mandated by Rule 42(a)." Appellee's Br. at 24. This argument fails. The only notice Judge Conrad provided of a possible second contempt charge came at the start of the bench trial on the first contempt charge. Then the court notified Peoples that it would conduct a trial on the second contempt charge immediately following the first trial. Although the court allowed Peoples the opportunity to confer with his attorney from the first contempt trial prior to making a statement in the second contempt trial, the court did not even break between the two proceedings. Nor did the court appoint a prosecutor for the second contempt trial. And, although the court admitted no evidence at the second contempt trial, it considered Peoples' record of tardiness in the first contempt case (although apparently not his demonstration that genuine car trouble caused one occasion of tardiness) in finding Peoples committed the second contempt. In sum, contrary to the Government's argument, the second contempt proceeding did not comply with Rule 42(a); the district court plainly erred in summarily punishing Peoples under Rule 42(b) for tardiness.

We therefore must consider whether this error affected Peoples' substantial rights. *See In re Gates*, 600 F.3d at 340. In general, an error affects substantial rights if it "has a prejudicial effect on the outcome," *id.*, but the Supreme Court has identified "a special category of forfeited errors that can be corrected regardless of their effect on the outcome," *United States v. Olano*, 507 U.S. 725, 735 (1993). Such errors "render a trial fundamentally unfair," *Rose v. Clark*, 478 U.S. 570, 577 (1986), and thus "necessarily affect substantial rights," *United States v. Neal*, 101 F.3d 993, 999 (4th Cir. 1996) (internal quotation marks omitted).

The Court has also held that a person accused of criminal contempt enjoys the normal range of procedural rights. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994). Of course, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Because the second contempt conviction resulted from a summary proceeding erroneously denying Peoples this opportunity, we must conclude that this error affected his substantial rights.

We "exercise our discretion to correct the error only when 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *In re Gates*, 600 F.3d at 341 (quoting *Olano*, 507 U.S. at 736). As we concluded in *In re Gates*, the sort of error at issue here is "of the most fundamental kind. Notice of criminal charges and an opportunity to respond to them are bedrock principles in our system of justice." 600 F.3d at 341. Accordingly, we exercise our discretion to correct the error and reverse Peoples' second contempt conviction.

IV.

For the reasons set forth above, we affirm in No. 11-4963 and reverse in No. 11-4965.

No. 11-4963 *AFFIRMED*
No. 11-4965 *REVERSED*