**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-6163**

In re: PRECIOUS LATERICA OLIPHANT,

       Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:18-mc-00202-GCM)

Argued:  May 4, 2021                                 Decided:  January 4, 2022

Before KING and DIAZ, Circuit Judges, and FLOYD, Senior Circuit Judge.

Reversed by unpublished opinion.  Judge King wrote the opinion, in which Judge Diaz and Senior Judge Floyd joined.

**ARGUED:**  Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

While leaving the courtroom after watching a plea hearing in the Western District of North Carolina in November 2018, appellant Precious Laterica Oliphant exclaimed, "Piece of shit!" The presiding magistrate judge heard Oliphant's exclamation, ordered Oliphant brought to the bench, summarily declared her guilty of criminal contempt, and sentenced her to 10 days of incarceration. Oliphant unsuccessfully sought reconsideration by the magistrate judge and then appealed to the district court, which affirmed Oliphant's contempt conviction. In Oliphant's further appeal to this Court, however, we reverse the conviction based on the magistrate judge's failure to find that Oliphant possessed the requisite criminal intent.

I.

On November 29, 2018, Oliphant was among the spectators for the plea hearing of a criminal defendant named Dion Lamar Williams. The transcript reflects that, during the 17-minute hearing, the magistrate judge and the parties reviewed the terms of a plea agreement between Williams and the government, under which Williams agreed to plead guilty to an 18 U.S.C. § 1114 charge of attempted murder of a federal postal employee. Williams's guilty plea was in exchange for a binding 15-year sentence — five years less than the 20-year maximum — and dismissal of two other charges. Near the end of the hearing, the magistrate judge accepted Williams's guilty plea and indicated that he would recommend that the district court accept the terms of the plea agreement. The hearing then concluded at 10:40 a.m. without incident and without adjournment of court.

2

As she was exiting the courtroom — following the conclusion of Williams's plea hearing and before the next scheduled hearing began — Oliphant exclaimed, "Piece of shit!" That exclamation was recorded in a separate transcript, which reads in its entirety:

> MS. OLIPHANT:  Piece of shit[!]
>
> THE COURT:  All right.  Marshal, bring her back.  Stand right up here between the two tables.  Now, what's your — what's your name, ma'am?
>
> MS. OLIPHANT:  My name is Precious.
>
> THE COURT:  What's your last name?
>
> MS. OLIPHANT:  Oliphant.
>
> THE COURT:  I can't — I can't hear you.
>
> MS. OLIPHANT:  My name is Precious Oliphant.
>
> THE COURT:  And what was your — are you here on behalf of the defendant or what was —
>
> MS. OLIPHANT:  Yeah.
>
> THE COURT:  — your involvement today?
>
> MS. OLIPHANT:  Yes.  On behalf of the defendant.
>
> THE COURT:  All right.  Well, I heard what you said as you were going out the door and that is — that is not going to be tolerated in this court.  I am not going to tolerate that.  So I am going to hold you in summary criminal contempt for what you said.  You said an expletive.  You said it clearly within the hearing of the court and that constitutes what's called a summary contempt.
>
> So do you want to say anything before I impose a sentence?
>
> MS. OLIPHANT:  No, Your Honor.
>
> THE COURT:  All right.

UNIDENTIFIED AUDIENCE MEMBER: Judge, Your Honor. Judge, Your Honor.

THE COURT: No, ma'am. No, ma'am. I don't need to hear anything else. She's responsible for this.

I'll impose ten days in the custody of the Sheriff — or the Marshal. I'm sorry.

All right, Marshal[], take her out.

*See* J.A. 29-30.[1] According to the transcript, Oliphant's exclamation was made at 10:40 a.m. and the summary criminal contempt proceeding concluded about two minutes later, at 10:42 a.m.

Later the same day, the magistrate judge entered a written order memorializing his findings of fact and conclusions of law. *See In re Oliphant*, No. 3:18-mc-00202 (W.D.N.C. Nov. 29, 2018), ECF No. 1 (the "Contempt Order"). In pertinent part, the Contempt Order states:

> On November 29, 2018 Oliphant was seated in the courtroom during [Williams's plea hearing]. At the conclusion of the hearing, Oliphant began to leave the courtroom along with some other spectators. Before she reached the courtroom door, Oliphant shouted "piece of sh-t!" in a loud angry tone. Court was in session and her voice was loud enough to be heard throughout the courtroom. The Court directed the Marshals to bring her before the Court. Oliphant was advised that she was being held in summary criminal contempt of court.
>
> . . . .
>
> Oliphant's conduct occurred in the Court's presence and constituted misbehavior obstructing the administration of justice. The Court advised

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by Oliphant and the government in this appeal.

4

Oliphant that she was being held in summary criminal contempt for her profane outburst. The Court also allowed her an opportunity to respond.

Based upon the foregoing, the Court finds Defendant guilty of summary criminal contempt in the presence of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(e)(2) and (5). Accordingly, Defendant is committed to the custody of the Attorney General for ten days imprisonment.

See Contempt Order 1-2.

The following day (November 30, 2018), the then-incarcerated Oliphant requested appointment of counsel. The district court promptly ordered that counsel be appointed, but the order was not transmitted to the federal public defender's office until December 4, 2018.

On December 5, 2018, newly appointed counsel filed Oliphant's motion for reconsideration. By her motion, Oliphant requested that the magistrate judge withdraw the Contempt Order and institute a non-summary criminal contempt proceeding under Federal Rule of Criminal Procedure 42(a), with notice of the charge against her and the opportunity to prepare a defense. Alternatively, Oliphant requested that the magistrate judge resentence her to time served (then seven days).

The motion and a supporting memorandum explained that Oliphant had no criminal record; that she was a self-employed hair stylist, single mother, and primary provider to her two teenage children; that the subject of the plea hearing (Williams) was her boyfriend; and that her "exclamation was a sudden emotional outburst prompted by the situation." See J.A. 38-39. Oliphant emphasized that her exclamation "was *not* directed at the Court or any of its officers," and that the Contempt Order "contain[ed] nothing that would

indicate to the contrary." *Id.* at 39. Oliphant also pointed out that "[o]ther than the existence of the contempt proceeding itself, the record contain[ed] no evidence that [her] statement, which occurred between hearings, interrupted any judicial process or otherwise interfered with the actions of any judicial employee." *Id.* Additionally, Oliphant underscored that the magistrate judge was obliged to "consider [her] state of mind." *Id.* at 35. In that regard, Oliphant asserted that "[h]er exclamation was emotional, not calculated or premeditated, nor was it part of a pattern of disruption where she had already been warned." *Id.* at 35-36.

By docket entry of the next day (December 6, 2018), the magistrate judge denied Oliphant's motion for reconsideration. The docket entry stated only: "Upon reconsideration, the Motion is denied. So Ordered." *See* J.A. 26. Oliphant was not released until December 11, 2018 (her 13th day of confinement), due to an error in the United States Marshals Office. On December 13, 2018, Oliphant filed a notice of appeal to the district court under 28 U.S.C. § 636(e)(7). More than a year later, on January 15, 2020, the district court denied Oliphant's appeal without a hearing. *See In re Oliphant*, No. 3:18-mc-00202 (W.D.N.C. Jan. 15, 2020), ECF No. 16 (the "District Court Order").[2]

---

[2] Notably, there were misstatements of fact in the District Court Order, including that Oliphant was a spectator at Williams's "sentencing hearing" (it was a plea hearing) and that the hearing "concluded with the magistrate judge's recommendation that [Williams] receive a fifteen-year sentence" (the magistrate judge actually said he would recommend that the district court adopt the plea agreement benefitting Williams with a binding 15-year, below-statutory-maximum sentence). *See* District Court Order 1, 3. The district court also highlighted the fact — not known to the magistrate judge at the time of
(Continued)

6

Oliphant timely noted her further appeal to this Court. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

In this appeal, Oliphant challenges her contempt conviction on several grounds, including that the evidence was insufficient to prove — and the magistrate judge failed to make any finding — that she possessed the requisite criminal intent. We conclude that the lack of such a finding renders Oliphant's conviction fatally flawed.

A.

As a threshold matter, we recognize that under the generally applicable standards of review, we assess the magistrate judge's legal conclusions de novo and his factual findings for clear error. *See United States v. Peoples*, 698 F.3d 185, 189 (4th Cir. 2012). In evaluating the sufficiency of the evidence, we ask whether "there is substantial evidence to support the verdict," i.e., "evidence that a reasonable finder of fact could accept as

Oliphant's summary criminal contempt proceeding — that Williams was Oliphant's boyfriend. *Id.* at 1.

From there, the district court made two original findings on the premise that Oliphant was angry at the magistrate judge for what occurred during Williams's hearing: (1) that it was "clear that [Oliphant's exclamation] was directed at the magistrate judge"; and (2) that such "disruptive outburst of profanity — timed as she exited the courtroom to avoid accountability — was self-evidently intended to show contempt for the court." *See* District Court Order 3, 5 (internal quotation marks omitted). The court also endorsed the magistrate judge's bare finding that Oliphant obstructed the administration of justice, elaborating that she "delayed the magistrate judge and court personnel from moving on to new matters" and caused "a marshal . . . to leave his post to stop [Oliphant] from leaving the courtroom[] and a clerk . . . to create a new case for this matter." *Id.* at 4.

adequate and sufficient to support a conclusion of [Oliphant's] guilt beyond a reasonable doubt." *See id.* (internal quotation marks omitted).

The government maintains, however, that we should review Oliphant's contempt conviction for plain error only, on the ground that Oliphant failed to immediately object to the summary proceeding or the magistrate judge's verdict. *See In re Gates*, 600 F.3d 333, 337 (4th Cir. 2010) (conducting plain error review where "Gates did not object to the summary procedure employed by the district court in its consideration of criminal contempt sanctions against him, nor did he specifically challenge the sufficiency of the evidence to satisfy the elements of a criminal contempt offense"). Under the plain error standard, we are required to uphold Oliphant's conviction unless we conclude not only that the magistrate judge committed a plain and prejudicial error, but also that "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *See id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Oliphant contends that the plain error standard does not apply because the magistrate judge did not accord her a meaningful opportunity to respond during the summary contempt proceeding and because she thereafter sought reconsideration. As further explained below, we need not decide whether our review should be limited to plain error because even under that stringent standard, Oliphant's contempt conviction must be reversed.

### B.

Pursuant to our precedent, a criminal contempt conviction requires proof beyond a reasonable doubt of the following elements: "(1) misbehavior of a person, (2) which is in

or near to the presence of the Court, (3) which obstructs the administration of justice, and (4) which is committed with the required degree of criminal intent." *See Peoples*, 698 F.3d at 189 (internal quotation marks omitted). The intent element may be satisfied by "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *See United States v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977) (internal quotation marks omitted).

Here, the magistrate judge made no finding during the summary criminal contempt proceeding or in the Contempt Order that Oliphant possessed the requisite criminal intent. Indeed, even after Oliphant argued in support of her motion for reconsideration that the magistrate judge was obliged to "consider [her] state of mind," *see* J.A. 35, the magistrate judge remained silent on the intent element.[3]

The failure of a finder of fact to make a finding on an essential element of the criminal offense may sometimes be excused as harmless. *See, e.g.*, *United States v. Aramony*, 88 F.3d 1369, 1383-85 (4th Cir. 1996). But even under the plain error standard, that can occur only if, in pertinent part, the fact finder inevitably would have deemed the element to be satisfied in the face of overwhelming evidence. *See United States v. Cedelle*, 89 F.3d 181, 186 (4th Cir. 1996).

---

[3] Although the district court later made an original finding in Oliphant's initial appeal that her exclamation "was self-evidently intended to show contempt for the court," *see* District Court Order 5 (internal quotation marks omitted), that finding is not entitled to any deference. As the Supreme Court has explained in reviewing a contempt conviction, "the question is not upon what evidence the trial judge *could* find petitioner guilty but upon what evidence the trial judge *did* find petitioner guilty." *See Eaton v. City of Tulsa*, 415 U.S. 697, 698 (1974) (per curiam).

Crucially, there is not overwhelming evidence that Oliphant possessed the requisite criminal intent. This is not a case, for example, where a person engaged in disruptive conduct, the court warned the person to cease the conduct or face a contempt conviction, and the person repeated the conduct anyway. *See In re Chaplain*, 621 F.2d 1272, 1276-77 (4th Cir. 1980) (affirming contempt conviction based on conduct that occurred following court's warning). Rather, with no prior warning that her conduct would be considered wrongful, Oliphant engaged in a single outburst. Moreover, she did so when no court proceeding was being conducted and while she was leaving the courtroom. Those circumstances can easily be viewed as suggestive of the absence — rather than the presence — of criminal intent. Thus, the evidence that Oliphant possessed the requisite criminal intent is not overwhelming and her contempt conviction cannot stand.[4]

C.

Finally, we note the government's request for a remand should we conclude — as we do today — that the magistrate judge failed to make any necessary findings. The

---

[4] Because we reverse Oliphant's contempt conviction on the basis of the magistrate judge's failure to find the requisite criminal intent, we need not reach and assess Oliphant's other grounds for contesting her conviction. Those include that the conviction was constitutionally infirm under the Supreme Court's *Eaton* decision, *see* 415 U.S. at 698 (recognizing that a "single isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support the conviction of criminal contempt"); that there was insufficient evidence that Oliphant's exclamation was obstructive even under the standard recited in our *Peoples* decision, *see* 698 F.3d at 191 (explaining "that the delay and distraction resulting from a court's investigation of misconduct can be considered in determining if a defendant has obstructed the administration of justice"); and that the magistrate judge abused his discretion by conducting the summary (rather than a non-summary) proceeding.

government has identified no authority for the proposition that the magistrate judge should be accorded an opportunity to make findings now that he failed to make before, and we deny the requested remand as unwarranted and inappropriate. We also emphasize what the Supreme Court and our Court have long cautioned: that summary criminal contempt proceedings should be employed only in exceptional circumstances. *See, e.g.*, *Sacher v. United States*, 343 U.S. 1, 8 (1952) ("Summary punishment always, and rightly, is regarded with disfavor . . . ."); *United States v. Willett*, 432 F.2d 202, 205 (4th Cir. 1970) ("Such procedure should be used only to fill the need for immediate penal vindication of the dignity of the court." (internal quotation marks omitted)).

## III.

Pursuant to the foregoing, we reverse Oliphant's criminal contempt conviction, as imposed by the magistrate judge.

*REVERSED*