IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE JOSEPH A. HURLEY, | § | Nos. 348, 2019 |
| | § | 502, 2019 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| | § | |
| | § | Nos. N19M-70-067, |
| | § | K19M-11-002 |
| | § | |
| | § | |
| | § | |
| | § | |

Submitted: June 10, 2020
Decided: July 28, 2020

Before **SEITZ**, Chief Justice; **VAUGHN**, and **MONTGOMERY-REEVES**, Justices.

## **ORDER**[1]

This 28th day of July, 2020, having considered the briefs and the record below, it appears to the Court that:

(1) The Superior Court twice found Joseph Hurley, a Delaware criminal defense attorney, in contempt of court and in each case imposed a $1,000 fine. In the first case, after the court warned Hurley not to show up late for another calendar call, Hurley arrived late and did not notify the court he would be late. In the second case, after the Superior Court ordered Hurley not to comment to the media during a

---

[1] Because both appeals consider similar questions of law, we consolidated them *sua sponte*.

high-profile criminal trial without applying first to the court, and Hurley understood those conditions, Hurley commented to the media about the case. A newspaper covering the criminal prosecution printed Hurley's comment.

(2) On appeal, Hurley raises two issues with the court's contempt orders—first, given the criminal nature of both contempt orders and the specific conduct held contemptuous, the Superior Court could not hold him in criminal contempt without advance notice and a separate hearing. And second, the evidence in both cases did not support the criminal contempt finding.

(3) We need only address the first issue to decide this appeal. While we sympathize with the Superior Court's frustration with discourteous conduct and recognize the court's need to maintain order and respect for its authority, the court's rules of criminal procedure and Delaware law limit summary criminal contempt citations to conduct in the court's presence. Under Delaware law and the Superior Court's Rules of Criminal Procedure, summary contempt orders should not be used to punish tardiness to court and statements made outside of court that violate court orders. Because Hurley was entitled to advance notice and a separate hearing before the court could find him in criminal contempt in the two cases, we reverse both contempt orders and remand to the Superior Court, if it chooses to do so, to issue orders to show cause specifying the infractions and then to conduct hearings to adjudicate the contempt of court charges.

The First Contempt Order

(4)     The Superior Court expected Hurley at a call of the criminal calendar at 9:00 a.m. on July 9, 2019, for two matters.  Hurley did not arrive on time and missed the first call.  He was present for the second call that began at 9:49 a.m.  When the court reached one of Hurley's cases in the second calendar call, Hurley offered an explanation for his lateness for the first calendar call—a pretrial conference for another case that went later than expected due to telephone system issues—and confirmed that the case before the court was ready for trial.[2]

(5)     At sidebar the court recalled that, according to its notes, in March 2018 the court warned Hurley that because he was repeatedly late for call of the calendar, the court would sanction him if he was late again.[3]  According to the court, Hurley did not notify the court that he would be late.  Under 11 *Del. C.* § 1271(1), the court found Hurley in criminal contempt and fined him $1,000.  In an order that followed the contempt citation, the court noted that "Hurley's tardiness disrupts Court

---

[2] App. to Opening Br. at A-9–10 (Hurley explained that, "three weeks ago our phone system went down, and we contacted the people that put our phone system in.  They sent a person out, spent three hours, figured it out.  It was okay.  Last Thursday, it went out again, and we had another person come out, and he said he felt he had it under control.  Over the weekend, the phone didn't ring for five days.  This morning, I had a conference, telephone conference, with Judge Primos on a first degree murder trial.  We were supposed to begin the conference at 8:30.  I sat by the phone from 8:20, so I wouldn't miss it.  Nothing happened.  Finally, he got through at 8:39, and at that point in time, I had the telephone conference with him and caused me to be delayed, Your Honor. I apologize.").

[3] *Id.* at A-12.  Hurley argues that "there is a factual dispute as to the accuracy of [that] recollection." Opening Br. at 5.

proceedings by causing unnecessary delays and attendant inconvenience and frustration for the Court and the Parties."[4]  Hurley sought reargument and to expand the record to attempt to justify his tardiness, both of which the Superior Court denied.[5]

The Second Contempt Order

(6)    Hurley represented a defendant in another criminal case with "extensive media coverage."[6]  At a pre-trial conference on October 28, 2019, the Superior Court ordered counsel not to make extrajudicial statements unless permitted by Delaware Lawyers' Rule of Professional Conduct 3.6.[7]  After Hurley gave an interview to reporters the next day, the court called the attorneys for a conference.  Hurley explained that he complied with Rule 3.6 and told the reporters only "what the law is and what [he] said in [his] opening statement."[8]  The court noted its concern that "continued interaction with the media might lead to the making of statements that could prejudice the proceeding, however careful attorneys might

---

[4] Opening Br. Ex. C. at 2.

[5] After filing his appeal, Hurley asked this Court to remand to supplement the record, which this Court denied.  Hurley's amended motion to remand was deferred pending this decision.  Given the resolution of these appeals, we dismiss his request as moot.

[6] App. to Answering Br. at B4.

[7] *Id*. at B5 ("So the Court wants to make it clear that during the pendency of this case, extrajudicial statements are not to be made by counsel except as otherwise permitted by Rule 3.6.").

[8] *Id*. at B30.

4

be to comply with the rule."[9]  And the court noted its preference for the State's response: "no comment."[10]

(7)    To address its concerns, the court "broaden[ed] [its] previous order" to limit counsel's media responses to "no comment."[11]  But if counsel thought there was a need to comment, it could apply to the court for an exception.[12]  Although the court allowed Hurley to attribute the "no comment" to a court order, it preferred simply "no comment."  The court made clear this was an order.[13]  Hurley understood the conditions.[14]

(8)    A few days later, the court held another conference to confront Hurley about more statements to the media.  The court told Hurley that it read a newspaper article that said "Defense Attorney Joseph A. Hurley acknowledged that [the defendant] plans to testify next week and declined comment other than, quote, 'Only a fool counts his chickens before they are hatched.  And that's all I have to say,' end quote."[15]  Hurley did not dispute that he made the statement, but argued that it did

---

[9] *Id.*

[10] *Id.* at B31.

[11] *Id.*

[12] *Id.* at B33 ("If you feel that it's necessary to have contact with the media in order to comply with any constitutional requirement, or other requirement, or a requirement set forth in the rule, I'm just asking you to make an application to the Court . . . .  And otherwise, if you do not feel that that is necessary or do not make an application, I'm asking you simply to not comment to the media when you are questioned.").

[13] *Id.* at B34 ("[I]t is an order.").

[14] *Id.* ("I understand it is [an order].").

[15] *Id.* at B38.

not violate the court's order. He explained that his interpretation of the order was "not to discuss the case, the merits of the case, anything about the case. And that's why I said 'only a fool.' It's a push-away just to say I don't want to talk to you."[16] He argued that he made the comments not to be rude to reporters and the comments would not be prejudicial, were within the spirit of the order, and were functionally the same as "no comment."[17]

(9) The court found Hurley in contempt and fined him $1,000. The court remarked that "[it did not] expect there will be any further violations of the Court."[18] Hurley responded by clarifying how he should respond in the future, and the court confirmed that "no comment" or an application for further statement were still the options. The court issued an Order of Contempt the following day.[19]

Issues on Appeal

(10) On appeal, Hurley argues that the court violated his due process rights in both cases when it summarily found him in criminal contempt of court. By summarily, we mean the court found Hurley in contempt on the spot without first providing advance notice of the charges and a separate hearing. According to Hurley, under Delaware law and the court's criminal rules of procedure, summary contempt

---

[16] *Id.* at B39.
[17] *Id.* at B39–40.
[18] *Id.* at B41.
[19] Opening Br. Ex. A.

can only be used to address misconduct occurring in the court's presence. Because his failure to appear on time and his comments to the press occurred outside the court's presence, Hurley argues he was entitled to a separate hearing after advance notice of the charges against him. The Department of Justice, representing the Superior Court on appeal, responds that Hurley's conduct was subject to the court's summary contempt power because it either occurred in the court's presence or was a civil contempt charge, and, regardless, the court provided adequate due process by allowing Hurley the opportunity to explain his conduct.

Legal Analysis

(11) First, we address the procedural arguments by the Department of Justice. According to the Department, for the contempt charge for speaking to the media, we should either dismiss the appeal because Hurley did not raise his arguments below or review his arguments only for plain error. Although Hurley did not raise the issues below, we are satisfied that, under Supreme Court Rule 8, the interests of justice weigh in favor of our review of Hurley's arguments made for the first time on appeal.[20] Hurley is challenging the Superior Court's use of its summary contempt powers. By the nature of a summary contempt finding, the contemnor has not had notice and a hearing, when he would have the chance to fully develop

---

[20] Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

arguments in response to an order to show cause. Thus, we will review for plain error, which are errors that are "fundamental in their character" and "clearly deprive an accused of a substantial right."[21] Otherwise, we review whether the Superior Court could adjudicate Hurley in contempt summarily as an issue of law *de novo*.[22]

(12) Second, the Department argues that, although Hurley was held in criminal contempt for his tardiness to the calendar call, in the case of Hurley's statements to the media, the contempt order is better viewed as civil rather than criminal contempt. The distinction is important because, criminal contempt being a criminal charge, the contemnor is entitled to heightened due process protections.[23] According to the Department, the order was meant to deter Hurley from violating the order again—a characteristic of civil contempt—rather than punishment for bad behavior—criminal contempt.

---

[21] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986); *see also In re Gates*, 600 F.3d 333, 341 (4th Cir. 2010) (finding the failure to provide notice of contempt charges was error "of the most fundamental kind" and "[n]otice of criminal charges and an opportunity to respond" are "bedrock principles" that caused the court to "correct the error").

[22] *See DiSabatino v. Salicete*, 671 A.2d 1344 (Del. 1996). If there is no issue of law, we review the court's sanctions in a contempt proceeding for an abuse of discretion. *See Matter of Ramunno*, 586 A.2d 1202, 1990 WL 255488, at *1 (Del. Dec. 19, 1990) (TABLE) (finding the Superior Court did not abuse its discretion by finding contempt).

[23] *United States v. Dixon*, 509 U.S. 688, 696 (1993) ("We have held that constitutional protections for criminal defendants . . . apply in nonsummary criminal contempt prosecutions just as they do in other criminal prosecutions."); *DiSabatino*, 671 A.2d at 1349 ("Where the offense is 'serious' or where the fine is more than 'petty,' however, criminal contempt proceedings must meet the State and Federal Constitutional requirements for the trial and punishment of crimes.").

(13)  Courts may "impose either civil or criminal sanctions for contempt."[24] Although the distinction between civil or criminal contempt is often murky, the "character and purpose of the sanction" determines the classification.[25]  A fine is civil "if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'"[26]  And if it does not compensate, then it is civil only if there is "an opportunity to purge the obligation by compliance."[27]  "Thus, a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance."[28]  In the case of Hurley's statement to the media, the court fined him $1,000 for disobeying its order and said it was finding him in contempt.[29]  The fine did not compensate anyone for the trouble caused by the contempt.  Instead, it was a punishment for disobeying the court's prior order.  There was no opportunity to reduce or purge the fine through compliance.  Thus the fine was a criminal sanction.  Similarly, and as the parties

---

[24] *DiSabatino*, 671 A.2d at 1349.

[25] *Id.*; *see Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827–28 (1994) ("[T]he Court emphasized that whether a contempt is civil or criminal turns on the character and purpose of the sanction involved.  Thus, a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant.  But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.") (quotations omitted).

[26] *DiSabatino*, 671 A.2d at 1350 (quoting *United Mine Workers*, 512 U.S. at 829) (alterations in original).

[27] *Id.* (quoting *United Mine Workers*, 512 U.S. at 829).

[28] *United Mine Workers*, 512 U.S. at 829 (quoting *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 588 (1947)); *see DiSabatino*, 671 A.2d at 1350 (adopting the same).

[29] App. to Answering Br. at B41 ("I have no choice but to find you in contempt, Mr. Hurley, because of your conduct.").

agree, the contempt sanction levied by the court for Hurley's lateness for the court calendar was criminal.

Criminal Contempt

(14)     Having found that Hurley's conduct in both cases should be treated as criminal contempt, we turn to the main issue Hurley raises on appeal—whether Hurley's misconduct was subject to summary disposition by the court. If not, Hurley was entitled to advance notice of the contempt charges and a separate hearing before the court could find Hurley in criminal contempt.

(15)   The Superior Court has the inherent power to punish contempt.[30] The power is "essential to the administration of justice," and exercising it may be necessary to impose respect and decorum in the courtroom.[31] Under Delaware law, 11 *Del. C.* § 1271 defines conduct that qualifies as criminal contempt of court.[32] Among the eight categories of contemptuous conduct, Section 1271(1) speaks directly to conduct in the court's presence—"[d]isorderly, contemptuous or insolent behavior, committed during the sitting of a court, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority." Under Section 1272, only if the conduct falls under Section

---

[30] *DiSabatino*, 671 A.2d at 1348.
[31] *Id.* (quoting *Young v. United States*, 481 U.S. 787, 795 (1987)).
[32] *See also* 11 *Del. C.* § 202(a) ("No conduct constitutes a criminal offense unless it is made a criminal offense by this Criminal Code or by another law.").

10

1271(1) can the contemnor "be convicted and sentenced for that offense without further criminal proceedings during or immediately after the termination of the proceeding in which the act constituting criminal contempt occurred." In other words, only contemptuous conduct occurring in front of the court can be adjudicated summarily. If the contemptuous conduct does not occur in the court's presence, the court must provide advance notice of the charge and a separate hearing for the contemnor to respond to the charges.

(16) Rule 42 of the Superior Court Rules of Criminal Procedure implements the statutory distinction between summary contempt proceedings and contempt proceedings that require advance notice and a separate hearing. Under Rule 42(a), entitled "Summary Disposition:"

> (a) A criminal contempt under 11 Del. C. § 1271(1) may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

Otherwise, the rule requires advance notice, adequate time to prepare a defense, and a separate hearing before a criminal contempt citation:

> (b) Disposition upon notice and hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the attorney general or of an attorney appointed by the court for that purpose, by an order to

11

show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which a statute so provides. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.[33]

(17) Contempt that occurs in the court's presence is described as direct contempt, while contempt occurring outside of the court is indirect contempt.[34] For direct contempt, as reflected in Sections 1271(1) and 1272 and Rule 42, the court is excused from the notice and hearing requirements because the court need not rely on outside evidence because it witnessed the conduct. This circumstance reduces the risk of erroneous deprivation of the contemnor's interests. The court also has a "substantial interest in rapidly coercing compliance and restoring order."[35] For indirect contempt proceedings, however, "the considerations justifying expedited procedures do not pertain."[36] Thus, indirect contempt, being a criminal charge,

---

[33] Super. Ct. Crim. R. 42(b).

[34] *DiSabatino*, 671 A.2d at 1349.

[35] *United Mine Workers*, 512 U.S. at 832; *In re Hillis*, 858 A.2d 317, 324 (Del. 2004) ("We conclude that the trial judge, acting out of necessity, appropriately found Hillis in contempt. The trial judge acted immediately to maintain respect and decorum in the courtroom, to protect the court and his office from further insult, and to discourage future petulant behavior by other members of the Delaware Bar."); *see also* 17 Am. Jur. 2d Contempt § 17 (2020) ("Direct contempt may be immediately adjudged and sanctioned summarily, and instantly, since the court's personal knowledge does not require the court to inform itself of the contemptuous conduct through witnesses and evidence. . . . When the misconduct occurs in open court, an affront to the court's dignity is more widely observed, justifying a summary contempt.") (footnotes omitted).

[36] *United Mine Workers*, 512 U.S. at 833 ("Summary adjudication of indirect contempts is prohibited."); *In re Oliver*, 333 U.S. 257, 275 (1948) (If the judge "must depend upon statements

12

requires advance notice of the charge and an opportunity to defend against the charge.[37]

(18)  Hurley argues that lateness cannot be considered direct contempt because it does not occur in the "immediate or actual presence" of the court.  We agree with other courts that criminal contempt for tardiness or absence should not be treated summarily.[38]  As noted earlier, the contempt here is criminal, not civil.  And as the parties agree, for Hurley to be guilty of criminal contempt, he must have acted with a reckless, knowing, or intentional state of mind.[39]  To determine Hurley's state of mind, the court must assess the reasons for Hurley's tardiness.[40]  Those

---

made by others for his knowledge about these essential elements [of the offense], due process requires, . . . that the accused be accorded notice and a fair hearing.").

[37] For "serious criminal sanctions," like "imprisonment of more than six months," the right to a jury trial also attaches.  *United Mine Workers*, 512 U.S. at 826–27, 838–39.  While this right also applies to serious fines, courts may impose "noncompensatory, petty fines" without a jury trial.  *Id.*  We need not draw the line between petty and serious because $1,000 falls well within the "petty" category.  *Id.* at 837 n.5 (noting that $10,000 imposed on a union was insufficient to trigger the right to jury trial).

[38] *See, e.g.*, *United States v. Peoples*, 698 F.3d 185, 192 (4th Cir. 2012) ("We, and the majority of our sister circuits, do not consider tardiness or absence from court to provide an adequate basis for summary disposition under Rule 42(b)."); *In re Contempt Order*, 441 F.3d 1266, 1268 (10th Cir. 2006) (finding that an attorney's absence for five minutes did not "occur within the presence of the court"); *United States v. Onu*, 730 F.2d 253, 255–56 (5th Cir. 1984) ("A lawyer's failure to attend court is not a contempt in the presence of the court."); *In re Allis*, 531 F.2d 1391, 1392 (9th Cir. 1976) ("Absence (tardiness) alone is not contempt.").

[39] *See* 11 *Del. C.* § 251(b) ("When the state of mind sufficient to establish an element of an offense is not prescribed by law, that element is established if a person acts intentionally, knowingly or recklessly."); 11 *Del. C.* § 252 ("[T]he state of mind . . . shall apply to all the elements of the offense . . . .").

[40] *See, e.g.*, *Gates*, 600 F.3d at 339 ("[A]bsence or tardiness alone is not contemptuous; the reasons for the failure to appear at the appointed time are of central importance."); *Onu*, 730 F.2d at 256 ("Contempt results only from the lack of a good reason for the lawyer's absence."); *Allis*, 531 F.2d at 1392 ("The reasons for the default are important.  A contempt is a wilful disregard or

---

excuses are extrinsic to the court hearing, making the contempt indirect.[41] Thus, Hurley was entitled to advance notice of the charges and a hearing before entering a contempt order.

(19) We also find that Hurley's statements to the press occurred outside the presence of the court. Thus, Hurley was entitled to advance notice and an opportunity to respond to the contempt charge. The Department of Justice argues that due process is satisfied with an opportunity to be heard, which occurred, and no jury trial was required because the fine was petty. Although we agree the fine was not serious enough to invoke Hurley's right to a jury trial,[42] the Department does not take into account the due process requirement for adequate notice and time to prepare a defense as required by Rule 42. Tempting as it might be to skip to the end when

---

disobedience of public authority and the requisite wrongful intent may be inferred from an attorney's reckless disregard of his obligations to the Court. If an explanation for tardiness is made which is inconsistent with wilful disobedience, a hearing must be held, if the facts are disputed, or, if the explanation is accepted there is no contempt.") (citation omitted).

[41] *Allis*, 531 F.2d at 1392 ("It is probably too late for an effective argument that tardiness of counsel is punishable summarily under Rule 42(a), Federal Rules of Criminal Procedure, as conduct committed in the actual presence of the Court. Persuasive appellate court opinions have sustained the view that it is not counsel's absence from the courtroom at the appointed hour which constitutes the contempt, if any. The import of these cases is that the contempt consists not in the absence from the courtroom but in the reasons for the attorney's presence elsewhere, and the presence elsewhere was, of course, not in the actual presence of the Court, a requirement for summary disposition under Rule 42(a), Federal Rules of Criminal Procedure.") (citations omitted).

[42] Hurley agrees he is not entitled to a jury trial. Reply Br. at 12–13 (arguing that he does not seek a jury trial because such a right "does not exist unless there has been a prison sentence of more than six months").

the facts appear undisputed, it is important to remember that the contempt being imposed is criminal, not civil.

(20) Both contempt charges were criminal and indirect. Consistent with due process and the statutory framework for adjudicating contempt charges, Hurley was entitled to advance notice and a separate hearing. The Superior Court plainly erred in entering summary contempt orders in both cases.[43]

(21) We note in closing that the trial courts are not powerless to address discourteous or contemptuous conduct by those who appear before them. Delaware law and Rule 42 give the court discretion to address contemptuous behavior by counsel and the public on the spot when it occurs in the court's presence. The trial courts can also impose criminal contempt for contemptuous conduct outside the court's presence. In the latter instance, however, before the court enters a criminal contempt order, it must afford the contemnor notice and a hearing.

NOW, THEREFORE IT IS ORDERED that the judgments of the Superior Court are reversed. The cases are remanded to the Superior Court, if it chooses to do so, to issue orders to show cause providing notice of the contempt charges and

---

[43] Rule 42(b) also provides that "[i]f the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." The alleged conduct underlying the charges here are not so disrespectful to or critical of a judge to warrant disqualification of the presiding judges on remand.

15

possible sanctions, and a hearing where Hurley can be heard and respond to the charges.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice