**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-4885**

———————

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

ERIC BERNARD DIXON, a/k/a Fat Cat,

          Defendant - Appellant.

———————

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Patrick Michael Duffy, Senior District Judge.  (2:10-cr-00649-PMD-1)

———————

Argued:  March 22, 2012         Decided:  June 5, 2012

———————

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme Court of the United States, sitting by designation, TRAXLER, Chief Judge, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** James Thomas McBratney, III, MCBRATNEY LAW FIRM, PA, Florence, South Carolina, for Appellant.  Jeffrey Mikell Johnson, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** William N. Nettles, United States Attorney, Matthew J. Modica, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Eric Bernard Dixon was convicted of one count of conspiracy to possess with intent to distribute cocaine and cocaine base, eight counts of possession with intent to distribute cocaine and cocaine base, and one count of possession of a firearm in furtherance of a drug trafficking crime. Dixon now challenges the denial of his motion for a mistrial and raises a conflict of interest claim for the first time on appeal. Finding no reversible error, we affirm.

I.

A.

In May of 2009, Lieutenant Phillip Ardis of the Clarendon County Sheriff's Office began an investigation into possible narcotics activity. Ardis enlisted the help of Melvin Lawson, a confidential informant, and Agent Janell McMillan, a member of the South Carolina State Law Enforcement Division who would serve as an undercover officer. Through conversations with Lawson, Ardis determined that Dixon and Randy Gibson would be targets of the investigation. Subsequently, seven drug buys were orchestrated, in which Gibson purchased cocaine base ("crack") from Dixon at McMillan's request and with her money.

In the first transaction on June 17, 2009, Lawson called Gibson and expressed interest in purchasing one ounce of crack.

Thereafter, McMillan and Lawson picked up Gibson, drove to Dixon's club, Fat Cats (the "club"), and parked their vehicle in the parking lot. Gibson then entered the club with $1,200 in cash provided by McMillan and purchased $410 worth of crack weighing 14.31 grams, which was all that was available for sale that day. The next three transactions similarly involved Lawson initiating contact with Gibson; McMillan and Lawson picking up Gibson; the three of them driving to the club; and Gibson entering the club to purchase crack. In the second transaction on June 18, 2009, Dixon was not at the club when they arrived. Once Dixon arrived, however, Gibson followed Dixon into the club and purchased 17.31 grams of crack. In the third transaction on June 24, 2009, Gibson purchased 3.31 grams of crack for $200. In the fourth transaction on August 6, 2009, Gibson purchased 27 grams of crack for $1200.

Following the fourth transaction, McMillan was able to deal with Gibson directly without relying on Lawson to initiate communication or participate in the transaction. In the fifth transaction on August 28, 2009, Gibson initiated contact by calling McMillan, and McMillan expressed interest in purchasing one ounce of crack. McMillan later picked up Gibson, who explained that Dixon would be at the club when they arrived. While driving to the club, McMillan observed Gibson call Dixon.

Upon arriving at the club, Gibson entered the club and returned with 18.7 grams of crack purchased for $800.

After the fifth transaction, McMillan was unable to reach Gibson by phone. Therefore, she drove to an area where she knew Gibson could be located, and she eventually found him. McMillan and Gibson then drove to the club where Gibson entered the club and purchased 20.7 grams of crack for $1,000. In the seventh and final transaction on September 3, 2009, Gibson called McMillan, they discussed purchasing two ounces of crack for $1,950, and they subsequently drove to the club, where Gibson purchased 34.87 grams of crack. While McMillan never purchased drugs directly from Dixon in any of the seven orchestrated transactions, she provided "buy money" to Gibson and observed Gibson reenter her vehicle with drugs in hand.

Later the same day of the final transaction, the Clarendon County Sheriff's Office executed a warrant for the club, where they found and arrested Dixon. Dixon was in possession of $3,685.00 in currency, which included some of the marked "buy money" used by McMillan in the prior drug transactions. Within the club, law enforcement officers also located 19.22 grams of cocaine, drug paraphernalia, two firearms, and ammunition. A third firearm was located under the driver's seat of Dixon's vehicle parked outside of the club.

Dixon was indicted on one count of conspiracy to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846; eight counts of possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). He pled not guilty, and a trial ensued.[1]

B.

Dixon was initially represented by Robert Haley of the Charleston County Federal Public Defender's Office. For reasons that are not clear from the record, the presiding federal magistrate judge relieved Haley as counsel prior to trial, and a new attorney from the Criminal Justice Act panel was appointed to represent Dixon.

On the first day of trial, McMillan testified in court that Lawson, during an interview with law enforcement prior to the drug transactions, stated that Gibson was a person who could purchase drugs directly from Dixon. The district court also permitted the government to introduce into evidence recordings of the drug transactions. These recordings included phone calls setting up the transactions and conversations between McMillan,

---

[1] Gibson was also charged in the same indictment as a co-defendant; however, he pled guilty pursuant to a plea agreement.

5

Gibson, and Lawson while driving to and from the club to purchase crack. Relevant to this case on appeal, these recordings also included statements made by Lawson. During the direct examination of McMillan, the recordings were played in open court, and McMillan provided narration.

During McMillan's testimony about the first transaction, the court and counsel for the parties became aware that Lawson had indicated that he would not testify despite being under a government subpoena to do so.[2] The district court appointed Mary Gordon Baker to represent Lawson. Like Dixon's initial attorney Haley, Baker was also employed by the Charleston County Federal Public Defender's Office. Upon learning that Lawson was refusing to testify, counsel for Dixon moved for a mistrial on the ground that the admission into evidence of statements attributed to Lawson violated Dixon's rights under the Sixth Amendment's Confrontation Clause. The district court did not rule on the motion at that time based on the possibility that Lawson might later in fact testify.

Subsequently, McMillan testified about the other transactions involving Lawson and narrated the associated recordings, subject to Dixon's preserved objection. Lawson

---

[2] Lawson's refusal to testify was based on threats to his family and his own poor health. The government was in no way complicit in Lawson's unavailability.

6

never testified at trial. Therefore, at the close of evidence, Dixon renewed his motion for a mistrial. However, the court denied the motion, focusing on the fact that Lawson's statements were admissible not for the truth of the matters asserted but, rather, to put the co-conspirator's statements into context.

The jury found Dixon guilty on all counts, and the court imposed a within-guidelines sentence of 138 months, consisting of 78 months for each of the nine drug counts, to be served concurrently, and a minimum 60-month term for the firearm offense, to be served consecutively. This appeal followed.

## II.

Dixon first argues that the appointment of Baker to represent Lawson created a conflict of interest because Baker and Dixon's former counsel Haley both worked for the same federal public defender's office. Because this claim was raised for the first time on appeal, we review for plain error. See Fed. R. Crim. P. 52(b); United States v. Offill, 666 F.3d 168, 174 (4th Cir. 2011). "[T]he burden is on the defendant in the plain error context." In re Gates, 600 F.3d 333, 340 (4th Cir. 2010). To satisfy this burden, Dixon must establish (1) there was error; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error seriously affected the

fairness, integrity, or public reputation of the trial. United States v. Olano, 507 U.S. 725, 732 (1993).

An error is plain if it is clear or obvious under current law. See id. at 734. "This standard is satisfied when the settled law of the Supreme Court or this circuit establishes that an error has occurred." United States v. Neal, 101 F.3d 993, 998 (4th Cir. 1996) (internal quotation marks omitted). In most cases, a plain error affects substantial rights if the error was prejudicial. See Olano, 507 U.S. at 734. An error is prejudicial under the plain-error standard when there is "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004) (alteration and internal quotation marks omitted).

Dixon frames his argument in terms of certain rules of professional conduct, and the government cites to others. Without weighing in on the applicability or significance of those rules, we conclude that there was no plain error. Even if appointing Baker to represent Lawson was an error, and even if that error was plain, Dixon still fails to establish a reasonable probability that the proceedings would have been different if an attorney other than Baker had been appointed to represent Lawson.

Dixon attempts to show prejudice by focusing on Baker's advocacy skills in preventing Lawson from testifying. Dixon fails to explain, however, why there is a reasonable probability that a lawyer from an organization other than the Charleston County Federal Public Defender's Office would have provided materially different advice and advocacy.

In any event, even if Lawson, through the representation of a different lawyer, had been compelled to testify, and even if he had chosen not to exercise his right under the Fifth Amendment to remain silent, there is still no reasonable probability that the result would have been different. In attempting to persuade the court of a likelihood that the result would have been different, Dixon suggests in his opening brief that the evidence "cannot be considered overwhelming." We simply disagree with this contention.

In this case, in addition to Gibson's testimony, McMillan testified in detail about her involvement in seven drug purchases from Dixon; Rudy Tisdale, a member of the Clarendon County Sheriff's Office, who was involved in executing the search warrant for the club, testified about drug paraphernalia found in the club; Harold Morris, a member of the Clarendon County Sheriff's Office at the time of executing the search warrant for the club, testified about finding a large wad of cash in Dixon's pocket; and Quincy Jackson, a former drug dealer

9

assisting the government pursuant to a plea agreement, testified that he witnessed his former clients frequently entering Dixon's apartment with money in hand and leaving with no money. Additionally, Dixon has already stipulated to the fact that the substances received by McMillan in each of the seven transactions were determined to be crack. Because Dixon cannot show prejudice from the appointment of Baker to represent Lawson, he cannot satisfy the plain-error standard.

## III.

Dixon also challenges the denial of his motion for a mistrial, arguing that the admission of testimony attributed to Lawson violated his rights under the Sixth Amendment due to his inability to confront Lawson about that testimony. "We review alleged Confrontation Clause violations under the de novo standard of review." United States v. Lighty, 616 F.3d 321, 376 (4th Cir. 2010). However, we review the denial of a motion for a mistrial under an abuse-of-discretion standard. See United States v. Wallace, 515 F.3d 327, 330 (4th Cir. 2008).

The Confrontation Clause of the Sixth Amendment affords Dixon the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has interpreted this clause to bar the introduction of out-of-court testimonial statements unless the declarant is unavailable and the defendant

10

has had a prior opportunity to cross-examine the declarant. <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 68 (2004). Inherent in this rule are two limitations. First, the statements at issue must be testimonial in nature. <u>See</u> <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006). Second, the statements at issue must be hearsay. <u>See</u> <u>Crawford</u>, 541 U.S. at 60 n.9 ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

Dixon's mistrial motion focused on two parts of McMillan's testimony: (1) Lawson's statement made during an interview with law enforcement that Gibson was a person who could purchase crack from Dixon, and (2) Lawson's statements heard by the jury on the recordings of the drug transactions and through McMillan's narration of the recordings. We address this latter testimony first.

A.

With regard to Lawson's statements on the recordings and McMillan's narration of the recordings, the district court concluded that they were not hearsay because they were admissible not for the truth of the matters asserted, but rather to provide context to the conversations between Lawson, Gibson, and McMillan. We have previously held that out-of-court statements may be admissible to provide context to conversations. <u>See</u> <u>United States v. Wills</u>, 346 F.3d 476, 490

11

(4th Cir. 2003). The decision to admit the evidence was also supported by United States v. Hendricks, 395 F.3d 173 (3d Cir. 2005). In Hendricks, the Third Circuit considered the admissibility of face-to-face conversations between several defendants and a confidential informant who was wearing a taping device at the time but was later unavailable to testify. That court found that the admission of statements made by the confidential informant did not violate the Confrontation Clause because the statements "put the statements of the other parties to the conversations into perspective and ma[d]e them intelligible to the jury." Id. at 184 (internal quotation marks omitted).

We find the Third Circuit's reasoning compelling. In this case, not only did the district court indicate that it would limit Lawson's out-of-court testimony to the specific purpose of providing context, but it also gave a limiting instruction to the jury. See J.A. 101 ("[Hendricks] held . . . that the statements [of a confidential informant] can be entered to put the co-conspirators' nontestimonial statements in context, but not for the truth of the matter. And I'm going to allow it for those same purposes."); J.A. 448 ("Any words of the confidential informant, Melvin Lawson, were admitted for the sole and limited purpose of providing context to both the undercover agent's and Randy Gibson's testimony."); see also United States v. Powers,

12

59 F.3d 1460, 1468 (4th Cir. 1995) (noting that "cautionary or limiting instructions generally obviate . . . prejudice").

Rather than disputing the purpose for which these statements were admitted, Dixon argues that the statements were testimonial. Whether the statements were testimonial is immaterial, however, because even if they were testimonial, the Confrontation Clause does not bar their admission "for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 60 n.9; see also Hendricks, 395 F.3d at 183 ("[E]ven if we were to hold that [the CI's] statements within the conversations are themselves testimonial, . . . such an outcome would not preclude the United States from introducing [the CI's] statements for a purpose other than establishing the truth of the matters contained therein.").[3] Accordingly, because this testimony was not admitted for the truth of the matters asserted, it was not hearsay and its admission did not violate the Confrontation Clause. The district court, therefore, did not abuse its discretion in denying Dixon's motion for a mistrial with regard to this testimony.

---

[3] Because we find that the statements at issue were not admitted for the truth of the matters asserted, we do not address whether they were testimonial.

13

B.

We turn finally to Lawson's statement that Gibson could purchase drugs from Dixon. Assuming, but without deciding, that the admission of this statement violated the Confrontation Clause, we find that the error was harmless. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) ("Confrontation Clause errors[ are] subject to . . . harmless-error analysis."). "When reviewing the erroneous admission of [evidence], the appellate court . . . simply reviews the remainder of the evidence against the defendant to determine whether the admission of the [evidence] was harmless beyond a reasonable doubt." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Factors to consider in determining whether the error was harmless include "the presence . . . of evidence corroborating . . . the testimony" and "the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684.

In this case, the assertion that Gibson could purchase crack from Dixon was corroborated by significant evidence proving that Gibson could in fact purchase crack from Dixon. Moreover, the evidence of Dixon's guilt was overwhelming. Therefore, even if the district court erred in admitting the statement at issue, which we assume without deciding, we find any error to be harmless.

14

IV.

For the foregoing reasons, we affirm Dixon's convictions.


<u>AFFIRMED</u>