**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 25-4045**

───────────────

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

     v.

CONNIE JAMERSON, Third-Party Custodian for Steven McClain Jamerson,

                Appellant,

     and

STEVEN MCCLAIN JAMERSON,

                Defendant.

───────────────

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:21-cr-00116-MR-WCM-1)

───────────────

Argued:  December 12, 2025               Decided:  February 27, 2026

───────────────

Before KING, THACKER, and BENJAMIN, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Thacker and Judge Benjamin joined.  Judge Benjamin wrote a concurring opinion.

───────────────

**ARGUED:**  Eric Jason Foster, LAW OFFICE OF RICK FOSTER, Asheville, North Carolina, for Appellant.  Donald David Gast, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  Russ Ferguson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

KING, Circuit Judge:

In this appeal from the Western District of North Carolina, appellant Connie Jamerson challenges the district court's January 2025 judgment adjudicating her guilty of "indirect criminal contempt" relative to her son's failing to report to serve a prison sentence in March 2024. *See United States v. Jamerson*, No. 1:21-cr-00116 (W.D.N.C. Jan. 16, 2025), ECF No. 54 (the "Contempt Judgment"). In November 2023, Ms. Jamerson had been appointed third-party custodian for her son, Steven McClain Jamerson, in connection with revocation proceedings that related to Mr. Jamerson's violation of supervised release conditions which stemmed from his prior federal conviction. As explained herein, we reject Ms. Jamerson's appellate contentions and affirm the Contempt Judgment.

I.

A.

As background, in late 2023, Steven Jamerson was in the process of concluding a sentence for a prior federal conviction. Specifically, Mr. Jamerson was then on supervised release in western North Carolina. Mr. Jamerson violated his terms of supervised release, however, and his probation officer promptly initiated revocation proceedings in the district court. Mr. Jamerson was returned into federal custody on November 20, 2023, and a federal magistrate judge conducted a detention hearing two days later.

In Mr. Jamerson's initial detention hearing, the magistrate judge concluded, by clear and convincing evidence, that Mr. Jamerson did not pose a flight risk nor a danger to the community. Critically, the magistrate judge then imposed a set of conditions on Mr.

2

Jamerson's release.  *See* J.A. 17-21 (the "Release Order").[1]  Pertinent here, the Release Order directed that Mr. Jamerson be placed in the custody of his mother, appellant Connie Jamerson, while he was on release pending the revocation proceedings.  And by Ms. Jamerson agreeing to be her son's third-party custodian during the pendency thereof, she became responsible for his compliance with the various conditions of release.

Of especial relevance to this appeal, the Release Order obligated Mr. Jamerson to "appear in court as required and, if convicted, surrender to serve any sentence imposed." *See* J.A. 17 (the "self-surrender condition").  And Ms. Jamerson acknowledged that, if she failed to ensure that Mr. Jamerson abided by the self-surrender condition of the Release Order, she would then be "subject . . . to adverse consequences." *Id.* at 18.

B.

In February 2024, Steven Jamerson appeared for his revocation hearing in the district court in Asheville.  During the revocation hearing, the court resolved to revoke Mr. Jamerson's term of supervised release, and it ordered him to serve an additional sentence of four months in prison, to be followed by eight months of supervised release.  At that juncture, however, the court did not remand Mr. Jamerson to federal custody.  The court instead allowed Mr. Jamerson to remain free and then self-surrender to the federal authorities at the appropriate time.  The court explained to Mr. Jamerson as follows:

> With regard to your [self-surrender] . . . you're going to be given that notice on when and where to appear to begin serving the balance of that sentence. Until then, you are released under the same terms of the bond that you had

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

when you came here today and that will be the constraints upon you during th[is] interim period.

*See* S.A. 18.[2]  The court advised Mr. Jamerson to "talk to [your] probation officer before you leave here today so that you make sure that you and he are on the same page." *Id.*  Of note, Connie Jamerson was in the Asheville courtroom during her son's revocation hearing.

Shortly thereafter, the United States Marshals Service fixed a report date for Mr. Jamerson of March 26, 2024.  To ensure that he was fully informed, the Marshals Service transmitted to Mr. Jamerson a letter notifying him of the March 26 report date.  Meanwhile, Ms. Jamerson was also notified of her son's report date by the probation office.

But Mr. Jamerson did not report as directed on March 26.  And despite Ms. Jamerson having knowledge of her son's report date and the requirement for him to self-surrender thereon, she did not take any action to ensure that the self-surrender occurred.  Rather, Ms. Jamerson later stated to the authorities that her son was a "grown person" who was "old enough to be . . . responsible for himself." *See* J.A. 40.  Mr. Jamerson was apprehended nearly a month later, on April 20, 2024, by police officers in Marshall, North Carolina.

### C.

In June 2024, the government filed a motion in the district court, seeking a court order directing Connie Jamerson — as custodian of her son, Steven Jamerson — to show cause why she should not be held in criminal contempt, pursuant to 18 U.S.C. § 401(3) (specifying that court may punish contempt caused by "disobedience or resistance to its

---

[2] Citations herein to "S.A. ___" refer to the contents of the Supplemental Appendix filed by the government in this appeal.

4

lawful writ, process, order, rule, decree, or command"). The magistrate judge appointed Ms. Jamerson a lawyer for the contempt proceedings, accepted briefing concerning the pertinent issues, and conducted a hearing on November 18, 2024. By order of December 20, 2024, the magistrate judge granted the government's show-cause motion and directed Ms. Jamerson to appear before the district court to show cause — if she could — why she should not be held in "indirect criminal contempt" for violating the Release Order.[3]

### D.

On January 16, 2025, the district court conducted its bench trial in this matter. During those proceedings, the prosecutors introduced evidence demonstrating that Connie Jamerson had abdicated her duties and obligations as her son Steven Jamerson's third-party custodian. According to the prosecution, in abdicating those responsibilities, Ms. Jamerson violated the Release Order's mandate that she was responsible for ensuring Mr. Jamerson's prompt compliance with the self-surrender condition. The prosecution also produced a video of Ms. Jamerson discussing the situation with the authorities. Meanwhile, by her lawyer, Ms. Jamerson argued that she could not have violated her obligations concerning the self-surrender condition imposed on Mr. Jamerson, in that the November 2023 Release Order memorializing that condition had expired on February 1, 2024 — that is, when the court resentenced Mr. Jamerson for violating his terms of supervised release.

---

[3] We observe that "[i]ndirect, or out-of-court, contempt" is criminal contempt that occurs outside of the presence of a judicial authority. *See, e.g.*, *United States v. Neal*, 101 F.3d 993, 996-97 (4th Cir. 1996) (recognizing that "[i]ndirect . . . [criminal] contempt does not occur within the presence of the court").

In an oral ruling at the conclusion of the January 16, 2025 bench trial, the district court concluded that the Release Order of November 2023 was in effect at the time of Mr. Jamerson's required self-surrender on March 26, 2024. And the court ruled that Ms. Jamerson had willfully violated the terms of the Release Order, reasoning as follows:

> [R]egarding the element of specificity of the notice and particularly the notice of whether or not the responsibilities of the custodian [i.e., Ms. Jamerson] extended beyond the February 1st, 2024, revocation hearing. I believe the terms of the document itself are clear that the conditions of release extend all the way up until the beginning of the service of a sentence in the event that a sentence is, in fact, imposed.
>
> So the document which is in evidence which is undisputed, namely the November '23 order, clearly extended . . . the responsibilities of Ms. Jamerson . . . beyond February 1, 2024.
>
> With regard to the issue of willfulness, I rely entirely on the video wherein Ms. Jamerson, at various points, acknowledges, I believe each of these points. She knew what her obligations were and yet notwithstanding that knowledge, did not fulfill those obligations.
>
> And I think willfulness is most clearly shown by the statement that she made, I believe more than once — I think it was actually stated twice on the videos — [that] Mr. Jamerson [was] an adult. He should be responsible for himself. Essentially [Ms. Jamerson was] expressing her abdication of any responsibility for [Mr. Jamerson] meeting the conditions of release.
>
> Therefore, having found beyond a reasonable doubt each of the elements regarding indirect criminal contempt in this matter, I find that Ms. Jamerson is, in fact, guilty of such contempt.

*See* J.A. 115.

That very day, January 16, 2025, the district court entered its Contempt Judgment and found Connie Jamerson guilty of indirect criminal contempt. *See* Contempt Judgment 1 (providing that "[b]ased on the evidence presented by the parties and the arguments of counsel, and for the reasons as stated in open court, the Court hereby finds Connie

6

Jamerson GUILTY of indirect criminal contempt, and she is . . . committed to the custody of the United States Marshals to be imprisoned for a term of THREE (3) DAYS").[4]

\* \* \*

Ms. Jamerson has timely noted this appeal from the Contempt Judgment, and we possess appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Our Court reviews "judgments resulting from a bench trial under a mixed standard of review; factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo." *See United States v. Perez*, 140 F.4th 237, 242 n.3 (4th Cir. 2025). To that end, whether valid court orders exist are purely questions of law that we review under the de novo standard. *See United States v. Linney*, 134 F.3d 274, 282 (4th Cir. 1998). And whether such an order is specific enough is a question of fact that we review for clear error. *See United States v. McMahon*, 104 F.3d 638, 642 (4th Cir. 1997).

## III.

On appeal, Connie Jamerson challenges the district court's Contempt Judgment on two grounds. First, Ms. Jamerson argues that, at the time her son Steven Jamerson was required to self-surrender to the Marshals Service in March 2024, there was no valid court

---

[4] The Contempt Judgment also released Ms. Jamerson "on her own recognizance" pending the outcome of this appeal, pursuant to 18 U.S.C. § 1343(b).

order in place that required her to act as his custodian and to ensure that he complied with the self-surrender condition of the Release Order. Second, Ms. Jamerson maintains that, if a valid court order then existed, it was not clear enough to support her contempt conviction. We assess — and reject — each of Ms. Jamerson's appellate contentions in turn.

A.

Before assessing Ms. Jamerson's contentions, some table-setting is warranted. Ms. Jamerson was convicted of what is called "indirect criminal contempt." *See, e.g.*, *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996) (specifying that "[i]ndirect . . . contempt does not occur within the presence of the court"). We have recognized that, pursuant to 18 U.S.C. § 401(3), "[a] court may punish 'contempt of its authority' such as '[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command.'" *See United States v. Westbrooks*, 780 F.3d 593, 595 (4th Cir. 2015) (quoting 18 U.S.C. § 401(3)). Put differently, an individual may be found in contempt of a court order if she "willfully violated a decree that was clear and left no uncertainty in the minds of those that heard it." *See In re Gates*, 600 F.3d 333, 341 (4th Cir. 2010) (citation modified).

Whether a criminal contempt has been proven depends on three elements. That is, there must be "(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." *See Gates*, 600 F.3d at 338-39 (citation modified). In this appeal, Ms. Jamerson focuses her appellate challenges on the first element — i.e., whether there was a reasonably specific court order in place as of March 2024 — and on the second element — that is, whether there had been a violation of any such court order.

8

B.

1.

Against this backdrop, we begin with Ms. Jamerson's contention that, as of March 2024, there was no valid court order in place that required her to act as Steven Jamerson's third-party custodian and thus to ensure that he complied with the self-surrender condition of the Release Order. In support of that proposition, Ms. Jamerson argues that the Release Order — which created the custodial relationship between her and Mr. Jamerson — only covered Mr. Jamerson's pretrial release period. Ms. Jamerson argues that, after the revocation of Mr. Jamerson's supervised release in November 2023, and following his resentencing in early February 2024, the Release Order was no longer in effect. On that basis, Ms. Jamerson says that she was not obligated to comply with — and therefore did not violate — the Release Order's terms in March 2024, when Mr. Jamerson failed to self-surrender to the federal authorities to serve his four-month prison sentence.

Ms. Jamerson premises her contention on the fact that the Release Order cited 18 U.S.C. § 3142(c)(1)(B)(i). Section 3142 authorizes a judicial officer to grant pretrial release to a defendant, if the judicial officer determines that the defendant poses neither a flight risk nor a danger to the community. For its part, § 3142(c) expressly provides the judicial officer with additional authority to impose conditions of release that will mitigate against such risks. And among the options available is that of § 3142(c)(1)(B)(i), which grants the judicial officer authority to order that the defendant

> remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the

9

person will appear as required and will not pose a danger to the safety of any other person or the community.

*See* 18 U.S.C. § 3142(c)(1)(B)(i).

Fatal to her contention, however, Ms. Jamerson overlooks another provision of Title 18 — that is, § 3143, which covers a release pending sentencing and, like § 3142, authorizes the judicial officer to release a defendant "who has been found guilty of an offense and who is awaiting imposition or execution of sentence." *See* 18 U.S.C. § 3143(a)(1). Importantly, § 3143(a) specifically authorizes the judicial officer to release the defendant after the sentencing hearing and to allow for his self-surrender. *Id.*

We conclude that the Release Order of November 2023 remained in effect as of March 2024, notwithstanding its citation to § 3142(c)(1)(B)(i). At least two of our sister circuits have determined that a district court's authority to detain — or, by implication, release — a defendant between his initial appearance on a supervised release violation and his final supervised release revocation hearing derives from both Federal Rule of Criminal Procedure 32.1(a)(6) and § 3143(a)(1). *See, e.g., United States v. Fernandez*, 152 F.4th 124 (2d Cir. 2025); *United States v. Smalls*, 155 F.4th 216 (3d Cir. 2025). In that regard, § 3143(a)(1) "authorizes detention of a defendant charged with a supervised release violation pending revocation proceedings." *See Fernandez*, 152 F.4th at 135; *Smalls*, 155 F.4th at 223. Accordingly, as those courts have ruled, a person serving a term of supervised release "has been found guilty of an offense" — which is the underlying offense of conviction and not the violation of supervised release — such that § 3143 applies, rather than § 3142. *See Fernandez*, 152 F.4th at 135; *Smalls*, 155 F.4th at 221-22.

Here, the district court released Steven Jamerson in February 2023 after he was resentenced, as part of his revocation proceedings. In so doing, the court complied with § 3143(a)(1) and imposed the same conditions of release that it had previously imposed in the Release Order of November 2023, pursuant to § 3142(c). *See* S.A. 18 (explaining that Mr. Jamerson was "released under the same terms of the bond that you had when you came here today and that will be the constraints upon you during that interim period"). Accordingly, the court's directive from the bench during the February 2024 revocation hearing complied with § 3143(a)(1) and otherwise served to continue the custodial relationship between Ms. Jamerson and her son, as created by the Release Order.[5]

2.

Having determined that there was a binding court order in effect on Steven Jamerson's self-surrender date in March 2024, we turn to Ms. Jamerson's contention that such a court order was not clear enough to support her indirect criminal contempt conviction. We have recognized that, in order to support a criminal contempt conviction,

---

[5] Challenging the proposition that the district court's February 2024 directive from the bench carried over the prior custodial relationship that had been established by the Release Order, Ms. Jamerson maintains on appeal that the court was required to conduct a separate legal analysis at two separate hearings. But Ms. Jamerson conceded that argument as meritless in the underlying proceedings. Specifically, her lawyer recognized that the court was not required to conduct two separate hearings.

Otherwise, Ms. Jamerson argues on appeal that she did not know that the Release Order had carried over following her son's resentencing in February 2024. But Ms. Jamerson was in the Asheville courtroom when the district court announced that it was continuing the conditions of the Release Order through her son's self-surrender date.

the court order must be "definite, clear, specific, and le[ave] no doubt or uncertainty in the minds of those to whom it was addressed." *See McMahon*, 104 F.3d at 642.

We conclude, however, that both the Release Order of November 2023 and the district court's February 2024 order — i.e., the court's directive from the bench that continued all aspects of the prior custodial relationship established by the Release Order — were abundantly clear to Ms. Jamerson. In these circumstances, Ms. Jamerson was her son's third-party custodian at all relevant times, and she had a continuing obligation to ensure that he complied with the self-surrender condition at the appropriate time, as specified in the Release Order. *See* J.A. 17 (recognizing that Mr. Jamerson "promises to appear in court as required and, if convicted, surrender to serve any sentence imposed").

\* \* \*

At bottom, we discern no infirmity in the Contempt Judgment. Not only did the district court correctly determine that a valid court order existed when Mr. Jamerson was required to self-surrender in March 2024, the court properly found that Ms. Jamerson had knowledge of that self-surrender condition and her obligations under the Release Order.

IV.

Pursuant to the foregoing, we are satisfied to reject each of Ms. Jamerson's appellate contentions and affirm the Contempt Judgment.

*AFFIRMED*

12

DEANDREA GIST BENJAMIN, Circuit Judge, concurring:

I concur fully in the majority opinion. I write separately to express my concern that an unrepresented third-party custodian could be held in criminal contempt for violation of a release order without that penalty first being specified.

I acknowledge the broad discretion afforded the district court in utilizing its contempt powers. Those powers are necessary "to secure judicial authority from obstruction in the performance of its duties. . . [and] to punish an act derogatory to the power and authority of the court." *Brandt v. Gooding*, 636 F.3d 124, 135 (4th Cir. 2011) (cleaned up). Yet, I find it alarming that an unrepresented third-party custodian may be subject to such criminal penalties without knowledge of the *specific* penalties. Ms. Jamerson was only informed that she may be "subject. . . to adverse consequences" if she failed to ensure her son met his self-surrender condition. J.A. 18. She received no notice she might be held in criminal contempt.

The Federal Rules of Criminal Procedure require that defendants be informed of the maximum penalties they may face both at initial appearances and in exchange for a plea. *See* FED. R. CRIM. P. 58(b)(2)(A) (requiring courts to inform defendants of the maximum penalty at the initial appearance on a misdemeanor or petty offense); *id.* 11(b)(1)(H) (requiring courts to inform defendants of the maximum penalty before accepting a plea). In asking one to submit to the court's authority and serve as a custodian of a defendant on release, the court should similarly inform that prospective custodian of the penalties they may face for failing to submit to that authority. Such disclosure would be good practice. Third-party custodians play an integral role in ensuring defendants comply with conditions

13

of release.  *See e.g.*, J.A. 18 (third-party custodians "agree[] (a) to supervise the defendant in accordance with all of the conditions of release, (b) to use every effort to assure the defendant's appearance at all scheduled court proceedings, and (c) to notify the [c]ourt immediately if the defendant violates any condition of release").

District courts should strive to fully inform custodians (as well as any other individual subject to the court's authority) not only of their duties to the court but any penalty of criminal contempt, including incarceration, that might follow abdication of those duties.